### HOUSING SECURITIES, INC. and Builders Investment Group

v.

### MAINE NATIONAL BANK.

Supreme Judicial Court of Maine.

Sept. 6, 1978.

---

Eaton, Peabody, Bradford & Veague by Bernard J. Kubetz (orally), Arnold L. Veague, Bangor, for plaintiffs.

Strout, Payson, Pellicani & Cloutier by Arthur E. Strout (orally), Rockland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On October 1, 1974, plaintiffs Housing Securities, Inc. and Builders Investment Group commenced an action in the Superior Court (Knox County) against defendant

Maine National Bank. Plaintiffs sought $60,000.00 in damages for the wrongful dishonor of a demand for payment under an irrevocable letter of credit issued by defendant. On October 18, 1976, after submission of the case on an agreed "Stipulation of Facts", the presiding Justice entered judgment for plaintiffs and ordered defendant to pay plaintiffs $60,000.00 plus legal interest and costs. Defendant has appealed from this judgment.

We deny the appeal.

On March 18, 1974, defendant issued its irrevocable letter of credit to David J. Dorenzo, agent of Housing Securities, Inc. as beneficiary.[1] The letter of credit, which was issued by defendant on behalf of its customer[2] Martin G. Olson, stated:

> "We hereby open our irrevocable Letter of Credit, effective immediately, in your favor, in the amount of Sixty Thousand ($60,000.00) Dollars for the account of Martin G. Olson of Camden, Maine.

> "The entire amount of the funds under this Credit is available to you against a written notice to us, accompanied by the original of the Letter of Credit, at the request of Builders Investment Group if required for Pine Tree Realty Trust. This letter of credit will be honored by us for ninety (90) days following this date."

At the time the credit was issued, Housing Securities, Inc. was an agent and advisor to Builders Investment Group which was an unincorporated real estate investment trust. Builders Investment Group had previously issued a mortgage loan commitment to the Pine Tree Realty Trust in relation to a real estate construction project in which Pine Tree was engaged on its property at the Kittery Mall. Martin G. Olson, one of the trustees of Pine Tree, was personally liable on the mortgage loan. When construction costs at the Kittery Mall project exceeded the Builders Investment Group loan commitment to Pine Tree, David J.

Dorenzo, an investment management officer of Housing Securities, Inc., asked Olson to obtain a letter of credit from a bank to secure the cost overruns. Builders Investment Group paid the excess construction costs and Olson caused defendant to issue the credit.

Before expiration of the 90 day period specified in the letter of credit, David J. Dorenzo of Housing Securities, Inc. presented defendant with a written demand for honor and payment. The demand for payment, as here applicable, stated:

> "Enclosed is your original irrevocable Letter of Credit in the amount of Sixty Thousand ($60,000.00) Dollars for the account of Martin G. Olson of Camden, Maine. The entire amount of the funds available under Maine National Bank's letter of credit, dated March 18, 1974, is due to David J. Dorenzo, Housing Securities, Inc., against a written notice to Maine National-Bank, accompanied by the original of the letter of credit, and is presented for negotiation at the request of Builders Investment Group and is required for Pine Tree Realty Trust. We therefore request you to draw and deliver a Bank Cashier's check for Sixty Thousand ($60,000.00) Dollars to the undersigned."

On June 17, 1974, defendant advised Dorenzo that plaintiff's "documentation as presented for payment . . . [was] deficient" and therefore defendant could not make payment under the letter of credit.

Thereafter in 1975, after commencement of the action in this case, Martin G. Olson and the other trustees of Pine Tree, both individually and in their capacities as trustees of Pine Tree, made an agreement with Builders Investment Group whereby Pine Tree agreed to convey all of Pine Tree's interest in the Kittery Mall to Builders Investment Group, which in turn agreed to

---

1. As defined in 11 M.R.S.A. § 5–103(1)(d), "[a] 'beneficiary' of a credit is a person who is entitled under its terms to draw or demand payment."

2. "A 'customer' is a buyer or other person who causes an issuer to issue a credit." 11 M.R.S.A. § 5–103(1)(g). "An 'issuer' is a bank or other person issuing a credit." 11 M.R.S.A. § 5–103(1)(c).

cancel the personal guarantees of the Pine Tree trustees.[3]

### 1.

As a threshold issue, we must consider defendant's argument that the Superior Court erred by refusing to require joinder of Olson as a party defendant. Defendant asserts that Olson is a "necessary and indispensable party" to this action because the failure to join Olson as a party defendant will leave defendant subject to inconsistent determinations, may prejudice Olson's interests and will result in a multiplicity of lawsuits.

The determination of whether the Superior Court committed error in refusing to order joinder of Olson in this action is governed by the standards set forth in Rule 19(a) M.R.Civ.P.[4] Rule 19(a) provides:

"A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party."

Under the first standard set forth in Rule 19(a), joinder is required in the circumstances of this case only if, in Olson's absence as a party, "complete relief cannot be accorded among those already parties." Resolution of this issue depends on the nature of the issuing bank's obligation to the beneficiary in a letter of credit transaction.

The Maine Uniform Commercial Code provides that a letter of credit is

"an engagement by a bank or other person made at the request of a customer . . . that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." 11 M.R.S.A. § 5–103(1)(a).

A bank issuing a credit "must honor a draft or demand for payment which complies with the terms of the relevant credit." 11 M.R.S.A. § 5–114. The beneficiary may recover damages from the issuing bank where the "issuer wrongfully dishonors a draft or demand for payment presented under a credit." 11 M.R.S.A. § 5–115(1).

The essential characteristic of a letter of credit is that it represents an affirmative undertaking on the part of the bank to honor a beneficiary's draft or demand for payment which complies with the terms of the credit.[5] See W. Ward & H. Harfield, Bank Credits and Acceptances, at 11 (4th ed. 1958). The credit is an assurance of payment in the context of a "paper" transaction. The undertaking of the issuing bank, although initiated at the request and for the account of its customer usually in connection with the customer's contractual

---

**3.** At the time, Pine Tree was substantially in default on the mortgage payments required under the mortgage. Pine Tree, however, agreed to remain liable on the note and mortgage.

Kittery Wine, a lessee of Pine Tree, was also a party to the agreement. Kittery Wine, which was in default on its lease, agreed to vacate its portion of the Kittery Mall by March 10, 1975 while Builders Investment Group agreed to release Kittery Wine from liability for any and all rental payments accrued and unpaid as of March 10, 1975.

**4.** The record indicates that Martin G. Olson resides in Camden, Maine. Since Olson is "subject to service of process", Rule 19(a) requires that the Court "shall order that he be

made a party" if he is a "necessary" party as determined by the standards set forth in Rule 19(a). Where a party is "subject to service of process" it is unnecessary to reach the question of whether the action "should proceed" in his absence in circumstances where he "cannot be made a party." Rule 19(b). See generally Wright & Miller, 7 Federal Practice and Procedure §§ 1604, 1607.

**5.** In the case of forged or fraudulent documentation or fraud in the transaction, the issuing bank is not required to honor a draft or demand for payment. 11 M.R.S.A. § 5–114. Defendant, however, has not attempted to justify its dishonor of the credit on this basis.

relationship with the beneficiary, is an independent primary and direct obligation of the bank to the beneficiary. The issuer's obligation to the beneficiary is completely independent of both the relationship between the issuer and its customer in regard to the letter of credit and the relationship between the customer and the beneficiary on the underlying transaction. See *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461 (2d Cir. 1970); *Asociacion de Azucareros de Guatemala v. United States National Bank of Oregon*, 423 F.2d 638 (9th Cir. 1970); *Savage v. First National Bank & Trust Company of Tulsa*, 413 F.Supp. 447 (N.D.Okl.1976); *Chase Manhattan Bank v. Equibank*, 394 F.Supp. 352 (W.D.Pa.1975); *New York Life Insurance Company v. Hartford National Bank & Trust Company*, 173 Conn. 492, 378 A.2d 562 (1977); *Dovenmuehle, Inc. v. East Bank of Colorado Springs*, 563 P.2d 24 (Colo.App.1977); *Intraworld Industries, Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316 (1975).

 Accordingly, the liability of issuing bank to a beneficiary for wrongful dishonor of a letter of credit can be fully adjudicated without making the customer a party to the action. The action here will resolve the question of the bank's liability to the beneficiary for wrongful dishonor of the letter of credit. The conduct of Olson as customer is completely irrelevant to the adjudication of this question in this case. We conclude, therefore, that complete relief can be accorded between plaintiff and defendant in this action in the absence of Martin Olson as a party.[6]

We turn then to consider whether in terms of the other standards set forth in Rule 19(a)(2) Olson "claims an interest relating to the subject" of this action and is "so situated that the disposition of the action in his absence" may either

"(i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

Application of these standards raises the inquiry whether an adjudication of this action without Olson as a party will, "as a practical matter", prejudice Olson's interests or present a substantial risk that any of those who are parties to the action will subsequently incur inconsistent obligations.

Under 11 M.R.S.A. § 5–114(3),

"[u]nless otherwise agreed, an issuer which has duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit . . . ."

Consequently, defendant says that the adjudication of defendant's obligation to honor the credit in this case may prejudice Olson's interest in any subsequent action initiated by the defendant against Olson in which Olson might attempt to defend in that (1) the letter issued by the defendant was not an irrevocable letter of credit within the meaning of Article V of the Uniform Commercial Code or, alternatively, (2) even if it is a letter of credit, the plaintiffs did not make a demand for payment which complied with the terms of the credit. At the same time, defendant also argues that it is subject to a substantial risk of incurring an inconsistent obligation if, in a subsequent action against Olson for reimbursement under the credit, Olson is able to prevail upon the argument that the document is not an irrevocable letter of credit or that plaintiffs did not comply with the terms of the credit in their demand for payment.

 The provision in Rule 19(a) that we view the question of prejudice to the

---

**6.** To the extent that concern with a multiplicity of lawsuits underlies the standards under Rule 19(a), application of the Rule will differ depending on the stage in the proceedings. When the joinder issue was raised at the outset of the proceedings in this case, the trial court here should have placed considerable emphasis on the likelihood of a latter suit between defendant and Olson in its overall determination of whether joinder of Olson was necessary under Rule 19(a). At the appellate level after a trial and final adjudication between issuer and beneficiary, economy of judicial resources dictates an avoidance of relitigation of issues where joinder of the customer would not affect the determination of the issues between issuer and beneficiary.

absent person's interests "as a practical matter" has both a restrictive and an expansive effect on the availability of compulsory joinder. On the expansive side, it is

"not necessary that an absent person would be bound by the judgment in a technical sense." 3A Moore's Federal Practice ¶ 19.07–1[2], at 19–132.

On the restrictive side, however, the mere possibility of prejudice does not require joinder. *Id.* Moreover, compulsory joinder must be viewed as

"an exception to the usual practice which permits plaintiffs to decide who shall become parties to a law suit." *Ford Motor Credit Company v. Beard,* 45 F.R.D. 523, 525 (D.S.C.1968).

It is thus critical in the evaluation of potential prejudice to Olson's interest "as a

practical matter" that the only possible questions relating to Olson's interests involve the legal construction of the letter, dated March 18, 1974, which was drafted and issued by the defendant bank. As explained in part 2 of this opinion (infra), since the specific questions whether the letter is an irrevocable letter of credit under 11 M.R.S.A. §§ 5–102, 5–103 and whether the plaintiffs' demand for payment complied with the terms of the credit are matters which are not reasonably subject to dispute, we conclude that the failure to join Olson as a party defendant did not result in practical prejudice to his interests.[7] For the same reason, we decide that defendant is not subject to a "substantial risk" of incurring inconsistent obligations by reason of Olson's interests.[8]

**7.** As a further indication of a lack of practical prejudice to Olson's interests, defendant as part of its own argument on appeal has advanced the documentation argument that it suggests is also in Olson's interest. In addition, defendant refused to admit in the proceedings below that it had issued an irrevocable letter of credit. Moreover, Olson's own views in this matter were submitted to the court and are part of the record before us in the form of an affidavit by Olson which defendant submitted as part of a motion for summary judgment in its favor. Olson's affidavit claimed that the letter of credit was issued for the sole purpose of ensuring payment of his construction cost indebtedness obligations. Olson asserts that any obligation to which the letter of credit related was settled in full and that he had no obligation whatsoever with respect to the matters set forth in the credit. This argument does not affect Olson's interests or the defendant's liability to plaintiffs, see part 3 infra, and Olson's participation here could not have changed that result.

Finally, it is also significant that Olson, who was well aware of the nature of this action, made no attempt to intervene in this action under Rule 24(a) M.R.Civ.P., which provides for intervention as of right in circumstances similar to those set forth in Rule 19(a) for compulsory joinder. As here relevant, Rule 24(a) provides:

"Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the

applicant's interest is adequately represented by existing parties."

Here, Olson's failure to claim the right to intervene provides further support for our conclusion that Olson is not a person who "*claims* an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest." Rule 19(a). See *American Civil Liberties Union of Maryland v. Board of Public Works,* 357 F.Supp. 877 (D.Md.1972).

**8.** In reaching this conclusion, we have assumed without deciding that had defendant made the necessary showing, compulsory joinder of Olson "as a party in the action" would have been necessary and proper under Rule 19(a). Because of the nature of the separate obligations arising in a letter of credit transaction, however, Olson could not theoretically be aligned as either a plaintiff or defendant "in the action" between plaintiffs and defendant. Since Olson's liability, if any, would be to defendant only for reimbursement of money paid under the credit, the further question, which we do not reach, would be whether Rule 19(a) contemplates that there should ever be compulsory joinder in such circumstances.

That Olson has possible liability only to defendant may also be relevant to the question of the "risk" to defendant of inconsistent determinations in separate actions. Defendant would be subject to inconsistent determinations in regard to the questions of the applicability of Article V of the U.C.C. and plaintiffs' compliance with the terms of the credit only if defendant would be legally entitled now to reimbursement from Olson of the funds due under the

### 2.

■ As applicable here to the question whether defendant issued irrevocable letter of credit, 11 M.R.S.A. § 5–102(1) provides:

"This Article applies

(a) To a credit issued by a bank, if the credit requires a documentary draft or a documentary demand for payment; and

. . . . .

(c) To a credit issued by a bank or other person, if the credit is not within . .

(a) . . . but conspicuously states that it is a letter of credit or is conspicuously so entitled."

Here, a "documentary draft" or a "documentary demand for payment" was not required by the terms of the credit. See 11 M.R.S.A. § 5–103(1)(b).[9] Nevertheless, since the short one page letter issued by defendant "is so written that a reasonable person against whom it is to operate ought to have noticed" that by its express language it indisputably purported to be an irrevocable letter of credit, we conclude that the credit "conspicuously" states that it is a "letter of credit" and thus is subject to the provisions of 11 M.R.S.A. §§ 5–101 to

5–117. See 11 M.R.S.A. § 1–201(10) and Comment thereto (definition of "conspicuous"); *Barclays Bank D.C.O. v. Mercantile National Bank,* 481 F.2d 1224 (5th Cir. 1973).

Concerning the question whether plaintiff complied with the terms of the letter of credit, defendant argues that the credit called for presentation of three documents, in addition to the original letter of credit, as a prerequisite to payment. According to defendant, plaintiffs were required to present documentation that (1) the funds were for the account of Martin G. Olson; (2) the funds were requested by Builders Investment Group; and (3) the funds were required for Pine Tree Realty Trust.

We reject this argument. Having issued a letter of credit, defendant's obligation was to "honor a draft or demand for payment which complies with the terms of the relevant credit." 11 M.R.S.A. § 5–114. See also 11 M.R.S.A. §§ 5–103, 5–115. In the traditional letter of credit situation where a credit is used to assure payment to the seller in a sale of goods transaction, the terms of the credit expressly require the seller-beneficiary to present documents

---

credit by proving the facts that have been adjudicated in this action. In view of the difficult and, at this ·point, premature nature of the question whether Olson is liable to defendant, we do not decide whether Olson is a person who "is or may be liable" to defendant for all or part of plaintiffs' claim against defendant so that defendant could have impleaded Olson under Rule 14(a) M.R.Civ.P. We mention the *possibility of impleader only insofar as defendant's* failure to attempt to implead Olson dampens defendant's claim as to the risk of inconsistent determinations. As explained in Field, McKusick & Wroth, Maine Civil Practice § 14.-3:

"If the defendant waits to bring a new action and neither impleads the third party nor vouches him in, he subjects himself to the hazard of inconsistent determinations by the two juries."

9. Although payment under the terms of the credit depended on presentation of a "written notice" to defendant "accompanied by the original of the Letter of Credit, at the request of Builders Investment Group if required for Pine Tree Realty Trust", we have concluded that the credit did not require a "documentary draft" or a "documentary demand for payment." As defined in 11 M.R.S.A. § 5–103(1)(b), "a 'docu-

mentary draft' or a 'documentary demand for payment' is one honor of which is conditioned upon the presentation of a document or documents. 'Document' means any paper including document of title, security, invoice, certificate, notice of default and the like." Traditionally, a document, "like" that described in § 5–103(1)(b), consists of a paper having evidentiary value of some fact. Since the requirement of the written notice from plaintiffs in the circumstance lacks such evidentiary purpose or significance, we have interpreted the credit essentially as a "clean" credit.

We recognize that it is arguable that a documentary draft or a documentary demand for payment was required by the provision for "written notice." See Comment 1, § 5–102, U.C.C. Even if we were to adopt this view, however, the result herein would not be changed. Article V of the U.C.C. on letters of credit would remain applicable to the credit by virtue of 11 M.R.S.A. § 5–102(1)(a). Moreover, viewing the "written notice" as a document would still be consistent with our decision that defendant wrongfully dishonored the demand for payment because no documentary evidence of the facts set forth in the written notice, other than that presented by plaintiffs, was required by the terms of the credit.

(such as documents of title) as part of the beneficiary's demand for payment. The presentation of such documents not only provides something of value to the bank but also serve to facilitate the sale of goods transaction by representing some evidence that the seller is performing its obligations on the underlying transaction. See generally H. Gutteridge & M. Megrah, The Law of Bankers, Commercial Credits (4th ed. 1968) W. Ward & H. Harfield, Bank Credits and Acceptances (4th ed. 1958).

▮ A letter of credit, however, need not require a *documentary* draft or a *documentary* demand for payment. As explained in the Comment to § 5–102 of the Uniform Commercial Code, a bank may issue "clean" as well as "documentary" letters of credit and, under § 5–102(1)(c), such credits are within the coverage of Article V. A "clean" letter of credit requires the beneficiary to present a draft or demand for payment and no other documents.[10] *Baker v. National Boulevard Bank of Chicago,* 399 F.Supp. 1021 (N.D.Ill.1975). See also *Brummer v. Bankers Trust of South Carolina,* 268 S.C. 21, 231 S.E.2d 298 (1977); *CNA Mortgage Investors, Ltd v. Hamilton National Bank,* 540 S.W.2d 238 (Tenn.Ct.App.1975); Verkuil, Bank Solvency of Guaranty Letters of Credit, 25 Stanford L.Rev. 716 (1973).

▮ In view of the terms of the credit in this case and the relationship of the credit to the underlying transaction, we decide that plaintiffs complied with the terms of the credit in making their demand for payment. The terms of the credit provided that the entire amount of the funds under the credit was available to plaintiffs against a "written notice" to the bank "accompa-

nied by the original of the Letter of Credit, at the request of Builders Investment Group if required for Pine Tree Realty Trust." The credit, which was drafted by defendant,[11] in no way indicates that any documentation in addition to the "written notice" was required to establish that the funds available under the credit were being requested by Builders Investment Group or were required for Pine Tree Realty Trust. Any requirement of documentation in this case would impair the function of the credit in this case as a "clean" guarantee of payment to plaintiffs pursuant to an existing liability. Pine Tree had obtained the mortgage loan commitment from Builders Investment Group. When Pine Tree construction costs at the Kittery Mall project exceeded the mortgage loan commitment, Builders Investment Group asked Olson to obtain a letter of credit to secure the cost overruns. Builders Investment Group had paid the cost overruns and thus justifiably expected the bank to honor its assurance of payment without requiring presentation of any documentation. In contrast to the use of a credit in a sale of goods transaction where the requirement of certain documents operates to facilitate performance of the underlying obligations of both parties and to evidence "on paper" that the seller has performed its obligations and is entitled to payment by the issuer on behalf of the buyer, the letter of credit here operated as an assurance that plaintiffs would receive payment on a money obligation already owed to plaintiffs. Since the credit was not conditioned on presentation of any "documents", we conclude that defendant wrongfully dishonored the demand for payment which complied with the terms of the credit.[12]

---

**10.** The requirement in 11 M.R.S.A. § 5–109(2) that the bank "examine documents with care", accordingly, must be read in context of the provisions relating to documentary drafts.

**11.** As between issuer and beneficiary, "if ambiguity exists, the words [of the credit] are taken as strongly against the issuer as a reasonable reading will justify." *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461 (2d Cir. 1970).

**12.** In factual circumstances similar to those involved in this case where the financing of a construction loan is involved, other courts have held that the written statement of the beneficiary that the funds were due under the provisions of the credit constituted a proper demand for payment under the credit. See, e. g., *Dovenmuehle, Inc. v. East Bank of Colorado Springs,* 563 P.2d 24 (Colo.App.1977); *New York Life Insurance Company v. Hartford Na-*

### 3.

Having decided that defendant wrongfully dishonored plaintiffs' demand for payment of the credit, we turn to examine defendant's remaining contention that the 1975 release agreement among plaintiffs, Pine Tree and Olson constituted a voluntary revocation of the letter of credit under 11 M.R.S.A. § 5–106(2). Alternatively, defendant argues that in view of the release agreement plaintiffs have failed to demonstrate other than nominal damages.

We reject the suggestion that the release agreement operated as a voluntary revocation of the letter of credit under 11 M.R.S.A. § 5–106(2). As here applicable, Section 5–106(2) provides:

> "Unless otherwise agreed, once an irrevocable credit . . . is established as regards the beneficiary it can be modified or revoked only with his consent."

Since the irrevocable letter of credit here was established as to the beneficiary when plaintiffs received the original credit, 11 M.R.S.A. § 5–106(1)(b), defendant could prevail in his argument only if plaintiffs' agreement with Pine Tree and Olson constituted a consent to revoke the credit. Courts in other jurisdictions examining this question have held that a release agreement between the beneficiary and customer as to the underlying transaction does not affect the issuer's obligation on the letter of credit unless the release agreement explicitly states that the beneficiary has consented to revocation of the credit. *Asociacion de Azucareros de Guatemala v. United States National Bank of Oregon*, 423 F.2d 638 (9th Cir. 1970); *Dovenmuehle, Inc. v. East Bank of Colorado Springs*, 563 P.2d 24 (Colo.App. 1977). See also *New York Life Insurance Company v. Hartford National Bank & Trust Company*, 173 Conn. 492, 378 A.2d 562 (1977). As explained in these cases, the issuing bank may assert the beneficiary's release of the customer as a defense only if the bank be in the position of a surety. The issuing bank, however, is not a surety or

guarantor in regard to the customer's obligation. The bank engages its own credit by guaranteeing payment in the first instance when it issues a credit, and its obligation to the beneficiary is completely independent of the underlying transaction between the customer and the beneficiary. Since the issuer's obligation to the beneficiary is a primary and independent one, a release or cancellation of the underlying debt by itself does not affect the bank's obligation. Here, the release agreement made no reference to any consent by the plaintiffs to revocation of the credit and, therefore, we conclude that defendant remains liable for its wrongful dishonor.

For the same reasons the release agreement between the customer and beneficiary here did not affect plaintiffs' right to recover the face value of the credit from defendant as damages for the wrongful dishonor of the demand for payment. To allow a settlement of the underlying transaction to reduce the issuer's liability in damages for wrongful dishonor would undermine the principle that the issuer's obligation to the beneficiary is primary and completely independent of the underlying transaction between beneficiary and customer. The issuer being independently liable on the credit in the first instance and the three transactions among the parties being separate and distinct, an agreement between beneficiary and customer which operates, as here, merely as a release or settlement of their obligations on the underlying transaction is without effect upon the extent of the issuer's liability in damages for wrongful dishonor. Cf. *Asociacion de Azucareros de Guatemala v. United States National Bank of Oregon*, 423 F.2d 638 (9th Cir. 1970); *Dovenmuehle, Inc. v. East Bank of Colorado Springs*, 563 P.2d 24 (Colo.App.1977); *Brummer v. Bankers Trust of South Carolina*, 268 S.C. 21, 231 S.E.2d 298 (1977).

By this ruling, we do not mean to suggest that the beneficiary may recover the face

*tional Bank & Trust Company*, 173 Conn. 492, 378 A.2d 562 (1977); *Brummer v. Bankers*

*Trust of South Carolina*, 268 S.C. 21, 231 S.E.2d 298 (1977).

value of the credit in every case where there is a wrongful dishonor of the credit. In this regard, 11 M.R.S.A. § 5–115(1) provides:

"When an issuer wrongfully dishonors a draft or demand for payment presented under a credit, the person entitled to honor has with respect to any documents the rights of a person in the position of a seller (section 2–707) and may recover from the issuer the face amount of the draft or demand together with incidental damages under section 2–710 on seller's incidental damages and interest but less any amount realized by resale or other use or disposition of the subject matter of the transaction. In the event no resale or other utilization is made, the documents, goods or other subject matter involved in the transaction must be turned over to the issuer on payment of judgment."

Thus, any recovery of damages by the beneficiary must be reduced by "any amount realized by resale or other use or disposition of the subject matter of the transaction."

In the sale of goods context which, historically, gave rise to the use of letters of credit the documents comprising the subject matter of the credit transaction between the bank and the beneficiary will often constitute something of significant value. *New York Life Insurance Company v. Hartford National Bank & Trust Company,* 173 Conn. 492, 378 A.2d 562 (1977); White & Summers, Uniform Commercial Code § 18–6. In such circumstances, the beneficiary must either resell the documents, thereby reducing his recovery of damages from the issuer, or turn the documents over to the issuer upon payment of the judgment and thereby give the bank something of value. However, in the context, as here, of a "clean" guaranty letter of credit involving a financial arrangement of pure credit, —"an area into which the use of letters of credit has recently been expanded", see *New York Life Insurance Company v. Hartford National Bank & Trust Company,* supra, at 566, 378 A.2d 562—the provision for "resale or other use or disposition of the subject matter of the transaction" does not apply to reduce the beneficiary's recovery

of the face value of the credit (plus interest) as damages for wrongful dishonor. *New York Life Insurance Company v. Hartford National Bank & Trust Company,* supra.

The entry is:

Appeal denied.

Judgment affirmed.