[No. D020429. Fourth Dist., Div. One. Feb. 15, 1996.]

SAN DIEGO GAS & ELECTRIC COMPANY, Plaintiff and Respondent,
v.
BANK LEUMI, Defendant and Appellant.

**COUNSEL**

Buchalter, Nemer, Fields & Younger and Jay R. Ziegler for Defendant and Appellant.

William C. Kamenjarin for Plaintiff and Respondent.

## OPINION

**KREMER, P. J.**—The instant litigation stems from defendant Bank Leumi's refusal to honor a draft presented by San Diego Gas & Electric Company (SDG&E) on a "standby" letter of credit issued by Bank Leumi (the Bank). The Bank appeals from a summary judgment in favor of SDG&E. We are asked to consider whether a beneficiary under a standby letter of credit owes the issuer of the letter of credit a duty to mitigate damages and, irrespective of any duty to mitigate, whether any actual mitigation entitles the issuer to a corresponding reduction of the beneficiary's recovery under the letter of credit. We answer these questions in the negative and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding the creation of the subject letter of credit are not in dispute. In May of 1988, SDG&E issued its revised standard offer No. 2 firm capacity purchase agreement, an offer to purchase electricity from small power producers. In June of 1988, SDG&E entered into a standard offer No. 2 agreement to purchase power from Luz San Diego Solar Partners, Ltd. I (Luz). Pursuant to that agreement, the Bank issued an irrevocable standby letter of credit in the amount of $400,000, naming SDG&E as beneficiary. The applicant for the letter of credit was Luz International, Ltd. on behalf of Luz.

The power purchase agreement between Luz and SDG&E called for the development and construction by Luz of a small power production facility, which was to commence operation by the end of 1993 and produce the electrical power to be purchased by SDG&E. The purpose of the standby letter of credit was to secure Luz's performance under the agreement. The letter of credit provided SDG&E could obtain payment under the letter by drafts drawn on the Bank and accompanied by a statement, signed by an authorized signer for SDG&E, certifying that the drawing was made in accordance with standard offer No. 2 and stating the deficiencies in Luz's performance giving rise to the drawing. In October of 1989, the amount of the letter of credit was increased by $25,000, resulting in an aggregate total amount of $425,000.

As a result of Luz's failure to reach certain "project development milestones" specified in the contract, in January of 1992 SDG&E sent the Bank a written demand to draw $425,000 under the letter of credit. The demand stated the drawing was made in accordance with standard offer No. 2, and stated Luz's deficiencies in performance of the contract, as required by the

letter of credit. The Bank dishonored SDG&E's demand on the ground the letter of credit had expired in June of 1990. SDG&E made a second demand that the Bank honor the letter of credit, disputing the Bank's contention the letter of credit had expired. The Bank again rejected SDG&E's demand.

In November of 1992, SDG&E filed the instant action for wrongful dishonor of demand, breach of contract, and breach of the implied covenant of good faith and fair dealing. The Bank opposed SDG&E's subsequent motion for summary judgment on the grounds the letter of credit had expired, there was a triable issue of fact as to the amount of loss SDG&E could have avoided pursuant to its duty to mitigate damages, and, irrespective of such duty, there was a triable issue of fact as to the amount by which the Bank was entitled to reduce its payment under the letter of credit due to voluntary mitigation efforts by SDG&E. The Bank requested that the motion be denied or continued pursuant to Code of Civil Procedure section 437c, subdivision (h) due to the Bank's incomplete discovery on the issue of mitigation of SDG&E's damages.

The court granted SDG&E's motion for summary judgment, ruling SDG&E was entitled to draw on the letter of credit in the full amount of its demand of $425,000. In its order granting the motion, the court expressly rejected the Bank's argument that the letter of credit had expired and implicitly rejected the Bank's mitigation arguments. The Bank limits its contentions on appeal to the mitigation issues.

<h2>Discussion</h2>

On appeal from a ruling on a motion for summary judgment, the appellate court conducts its own independent review of the moving and opposition papers and applies the same standard as the trial court in determining whether the motion was properly granted. (*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687].) The mitigation issues raised by the instant appeal are questions of law which must be decided in accordance with principles generally applicable to letters of credit.

Letters of credit are governed by division five of the California Uniform Commercial Code.[1] Section 5103, subdivision (a) defines a letter of credit as "an engagement by a bank or other person made at the request of a customer . . . that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit."

---

[1]All statutory references are to the California Uniform Commercial Code unless otherwise specified.

An excellent overview of the history and law concerning letters of credit is set forth in *Colorado Nat. Bank, etc.* v. *Bd. of County Com'rs* (Colo. 1981) 634 P.2d 32. The Colorado Supreme Court explains that "[t]he letter of credit arose to facilitate international commercial transactions involving the sale of goods. [Citations.] Today the commercial utility of the letter of credit in both international and domestic sale of goods transactions is unquestioned and closely guarded. [Citations.] In recent years, the use of the letter of credit has expanded to include guaranteeing or securing a bank's customer's promised performance to a third party in a variety of situations. [Citations.] This use is referred to as a standby letter of credit. Article five of the Uniform Commercial Code governs both traditional commercial letters of credit and standby letters of credit. [Citation.]

"Three contractual relationships exist in a letter of credit transaction. [Citations.] Underlying the letter of credit transaction is the contract between the bank's customer and the beneficiary of the letter of credit, which consists of the business agreement between these parties. Then there is the contractual arrangement between the bank and its customer whereby the bank agrees to issue the letter of credit, and the customer agrees to repay the bank for the amounts paid under the letter of credit. . . . Finally, there is the contractual relationship between the bank and the beneficiary of the letter of credit created by the letter of credit itself. The bank agrees to honor the beneficiary's drafts or demands for payment which conform to the terms of the letter of credit. [Citations.]" (*Colorado Nat. Bank, etc.* v. *Bd. of County Com'rs, supra,* 634 P.2d at p. 36.)

Although the relationship between the issuer and beneficiary of a letter of credit is often loosely described as "contractual," as in *Colorado Nat. Bank,* courts and commentators have pointed out that this is an inaccurate characterization. White and Summers state some "characterize the letter of credit as a contract between the beneficiary and the issuer, but it is better to call it an 'undertaking' and so avoid the implication that contract principles might apply to it." (3 White & Summers, Uniform Commercial Code (4th ed. 1995) § 26-2, p. 113; see also *Arbest Const. Co.* v. *First Nat. Bank & Trust Co.* (10th Cir. 1985) 777 F.2d 581, 583 [relationship between issuer and beneficiary is statutory, not contractual]; accord, *Ward Petroleum Corp.* v. *Federal Deposit Ins. Corp.* (10th Cir. 1990) 903 F.2d 1297, 1300; *Dibrell Bros.* v. *Banca Nazionale Del Lavoro* (11th Cir. 1994) 38 F.3d 1571, 1579 [beneficiary "cannot assert a breach of contract claim against the issuer because no contract exists between the two; rather, an engagement runs from the latter to the former."].)

Section 5114, subdivision (1) provides that "[a]n issuer must honor a draft or demand for payment which complies with the terms of the relevant credit

regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary."

The California code comment to section 5114 states, "Subdivision (1) reflects the concept that the letter of credit is independent from the underlying sales contract." (23B West's Ann. Cal. U. Com. Code (1964 ed.) § 5114, p. 718.) This unique feature, referred to as the "independence principle," is the primary characteristic of a letter of credit. Absent fraud, the issuer must pay upon proper presentment regardless of any defenses the applicant for the letter of credit may have against the beneficiary arising from the underlying transaction. (See, e.g., *Lumbermans Acceptance Co.* v. *Security Pacific Nat. Bank* (1978) 86 Cal.App.3d 175, 178 [150 Cal.Rptr. 69].) Thus, the issuer of a letter of credit is never entitled to defend against payment based on extraneous defenses which might have been available to the primary obligor.

"The rule of the independence of the letter of credit from the underlying transaction is based on two policy considerations. First, the issuing bank can assume no liability for the performance of the underlying contract because it has no control over making the underlying contract or over selection of the beneficiary [citation]. Second, the letter of credit would lose its commercial vitality if, before honoring drafts, the issuing bank were obliged to look beyond the terms of the letter of credit to the underlying contractual controversy between its customer and the beneficiary [citation]." (*Ross Bicycles, Inc.* v. *Citibank, N.A.* (1994) 161 Mis.2d 351 [613 N.Y.S.2d 538, 540-541].) "[O]ne of the expected advantages and essential purposes of a letter of credit is that the beneficiary will be able to rely on assured, prompt payment from a solvent party; necessarily, a part of this expectation of ready payment is that there will be a minimum of litigation and judicial interference, and this is one of the reasons for the value of the letter of credit device in financial transactions. [Citations.]" (*N.Y. Life Ins. Co.* v. *Hartford Nat. Bank & Trust Co.* (1977) 173 Conn. 492 [378 A.2d 562, 566].)

In the instant case, application of the independence principle is mandated by the express terms of the letter of credit in addition to section 5114, subdivision (1). The letter expressly states it is subject to the Uniform Customs and Practice for Documentary Credits (UCP) promulgated by the International Chamber of Commerce. The UCP expresses the independence principle through the following provisions. Article 3 provides that "credits, by their nature are separate transactions from the sales or other contract(s) on which they may be based and banks are in no way concerned with or bound by such contract(s), even if any reference whatsoever to such contract(s) is included in the credit." Article 4 states that "[i]n credit operations all parties

concerned deal in documents, and not in goods, services and/or other performances to which the documents may relate." Article 10 provides that "[a]n irrevocable letter of credit constitutes a definite undertaking of the issuing bank, provided that the stipulated documents are presented and that the terms and conditions of the credit are complied with . . . ." (Uniform Customs and Practice for Documentary Credits (1983 rev.) ICC pub. No. 400.)

The provisions of the UCP are not law; they are a record of customs and practice. However, section 1102, subdivision (3) of the California Uniform Commercial Code provides that "[t]he effect of provisions of this code may be varied by agreement . . . ." Accordingly, the provisions of the UCP have the force of law with respect to a letter of credit which expressly provides it is subject to the UCP. (See *Banca Del Sempione* v. *Suriel Finance, N.V.* (D.Md. 1994) 852 F.Supp. 417, 427, 428; *Consolidated Aluminum Corp.* v. *Bank of Virginia* (4th Cir. 1983) 704 F.2d 136, 137, 138; *Paramount Export Co.* v. *Asia Trust Bank, Ltd.* (1987) 193 Cal.App.3d 1474, 1480-1481 [238 Cal.Rptr. 920] [applying article 8 of UCP to letter of credit transaction where letter of credit was specifically made subject to those provisions].)

The Bank contends SDG&E's motion for summary judgment should have been denied because there are triable issues of fact as to whether SDG&E could have mitigated or actually did mitigate its damages. This contention is without merit because the Bank's mitigation defenses are clearly extraneous defenses which might have been available to *Luz* in an action by SDG&E against Luz on the underlying contract, and, therefore, are not defenses which the Bank, as issuer of the letter of credit, is entitled to assert.

The Bank states it is not contending that any duty to mitigate damages which SDG&E owes to Luz is relevant to SDG&E's recovery under the letter of credit. Rather, the Bank argues SDG&E's duty to mitigate arises directly from the contractual relationship between the Bank, as issuer, and SDG&E, as beneficiary of the letter of credit. This argument is unpersuasive. As noted, the relationship between issuer and beneficiary of a letter of credit is not truly contractual; it is more accurately described as a statutory relationship giving rise to a statutory obligation on the part of the issuer to make payment upon a proper presentation of documents by the beneficiary. As such, the relationship is not subject to analysis under ordinary contract principles such as those relating to mitigation of damages.

Furthermore, we fail to see how the mitigation defenses raised by the Bank can be viewed as anything other than defenses personal to Luz in an

action by SDG&E against Luz for breach of the underlying contract. SDG&E's duty to mitigate damages resulting from Luz's deficiencies in performance is a duty owed to Luz, arising directly from the contractual relationship between Luz and SDG&E. Characterizing that duty as one arising from the relationship between SDG&E and the Bank does not change its essential nature as one running from SDG&E to Luz.

The Bank argues a beneficiary's duty to mitigate damages is implied, if not expressly articulated, in section 5115, subdivision (1) which addresses a beneficiary's remedy for an issuer's wrongful dishonor of a letter of credit. Section 5115, subdivision (1) states, in pertinent part, "When an issuer wrongfully dishonors a draft or demand for payment presented under a credit the person entitled to honor has with respect to any documents the rights of a person in the position of a seller (Section 2707) and may recover from the issuer the face amount of the draft or demand together with incidental damages under Section 2710 on seller's incidental damages and interest *but less any amount realized by resale or other use or disposition of the subject matter of the transaction.*" (Italics added.) The Bank additionally argues that this provision requires a reduction in SDG&E's recovery corresponding to any voluntary mitigation of its damages, irrespective of a duty to mitigate.

■ Although section 5115, on its face, does not expressly impose a *duty* to mitigate damages on a beneficiary of a letter of credit, it does provide for a reduction of the beneficiary's recovery corresponding to actual mitigation effected by resale or other disposition of the subject matter of the transaction. However, read strictly, the mitigation language of section 5115, subdivision (1) applies only to *commercial* letters of credit, i.e., to cases in which the beneficiary is a seller of goods. The weight of authority considering the issue of a beneficiary's recovery under a *standby* letter of credit supports this strict construction of section 5115, holding that inquiry into the underlying contract to determine the extent of the beneficiary's actual damages is not permitted. (See generally, Dolan, The Law of Letters of Credit: Commercial and Standby Credits (2d ed. 1991) § 9.02[5][b][ii], p. 9-19; 3 White & Summers, Uniform Commercial Code, *supra*, at § 26-14, p. 207.)

For example, in *Colorado Nat. Bank, supra,* standby letters of credit were issued to secure a developer's completion of road improvements. (*Colorado Nat. Bank, etc.* v. *Bd. of County Com'rs, supra,* 634 P.2d at p. 34.) To demand payment under the letters, the beneficiary (a county) was required to present a written statement that the improvements had not been made in compliance with the underlying contract. (*Id.* at p. 38.) The court held the issuing bank could not litigate the performance of the underlying contract,

nor could it litigate the issue of whether the beneficiary was damaged by the failure of the bank's customer to perform as agreed, as these issues were irrelevant to the bank's liability under the letter of credit. (*Id.* at pp. 38-39.)

Similarly, the court in *East Girard Sav. Ass'n* v. *Citizens Nat. Bank, etc.* (5th Cir. 1979) 593 F.2d 598 held that a beneficiary under a standby or "guaranty" letter of credit was entitled to recover the face value of the letter without having to prove damages resulting from the dishonor. The court noted that "[t]he measure of damages used in ordinary contract cases is inapplicable because a letter of credit simply is not an ordinary contract. The letter of credit is a unique device developed to meet specific needs of the marketplace. If the letter of credit is to retain its utility as a commercial instrument, the rights and duties of the issuer, the beneficiary, and the procurer must remain clear. Parties to commercial transactions must be able to rely on the fact that as soon as the conditions contained in a particular letter are satisfied, payment is due. Allowing an issuer to dishonor a letter merely because the beneficiary cannot show any damages would undermine the certainty of payment that makes letters of credit so appealing to persons engaged in commerce." (*Id.* at p. 603.)

The *East Girard* court further concluded the mitigation language in section 5115 (requiring deduction of the amount received on resale of goods from the beneficiary's recovery) was inapplicable in a standby letter of credit transaction. The court explained that "[a] letter of credit involving a sale of goods almost always requires that title documents to the goods accompany a draft. Upon dishonor, the wronged party ordinarily sells those goods to recoup the loss. [Citation.] Thus, since the goods resold are specifically mentioned in the letter of credit, the court need not look to the underlying contracts to determine which goods are involved. Moreover, since the goods are identified, determining the amount by which the beneficiary's damages should be reduced is an easy task.

"An extension of the [Uniform Commercial Code] rule to require proof of actual damages here would, however, mandate an inquiry into the rights and liabilities established by the underlying contracts. If [the issuing bank's] arguments were accepted, the court . . . would have to [determine the extent of the customer's default on the underlying contract and] determine the extent of [the beneficiary's] injury as a result of that default. Any requirement that this inquiry be made would be contrary to the purposes which letters of credit were designed to serve. In addition, damages resulting from

the dishonor of [standby] will often be difficult, if not impossible, to assess." (*East Girard Sav. Ass'n.* v. *Citizens Nat. Bank, etc., supra,* 593 F.2d at p. 604.)[2]

In contending that SDG&E's recovery must be reduced to reflect any voluntary mitigation of its damages, the Bank is essentially arguing that SDG&E must prove damages from Luz's breach of the underlying contract in order to recover any sum under the letter of credit. As the aforementioned cases point out, to impose such a requirement on a beneficiary of a letter of credit would contravene the independence principle, which is fundamental to the letter of credit and the key to its "commercial vitality." (*Colorado Nat. Bank, etc.* v. *Bd. of County Com'rs, supra,* 634 P.2d at p. 37.) We therefore reject the Bank's voluntary mitigation argument as going against the weight of authority applying the independence principle to standby letters of credit.

The Bank relies primarily on *Wichita Eagle & Beacon Pub. Co.* v. *Pacific Nat. Bank of S.F.* (N.D.Cal. 1971) 343 F.Supp. 332, reversed (9th Cir. 1974) 493 F.2d 1285, as authority for the existence of a duty to mitigate in a standby letter of credit transaction. In that case the document the court found to be a letter of credit secured a commercial lessee's contractual obligation to construct a parking garage on the leased premises. The lessee failed to perform. However, the lessors were able to relet the premises to a different tenant under a more valuable lease. The beneficiary sued the issuing bank for refusing to honor the letter of credit when the beneficiary presented a demand for payment. (343 F.Supp. at pp. 334-337.)

Concluding the bank wrongfully dishonored the beneficiary's demand for payment, the *Wichita* court noted that the general rule requiring mitigation of damages applicable in sales of goods transactions "does not readily lend itself to the present context . . . because the performance to be secured here was the construction of a parking garage, a circumstance which has neither the liquidity nor the possibility of mitigation to be found in the sales situation." (*Wichita Eagle & Beacon Pub. Co.* v. *Pacific Nat. Bank of S.F., supra,* 343 F.Supp at p. 341.) However, based on the "realities of the situation," the court concluded the beneficiary was entitled to recover the face amount of the letter, less the enhanced value of the new lease as compared to the old lease. (*Ibid.*)

---

[2]See also *N.Y. Life Ins. Co.* v. *Hartford Nat. Bank & Trust Co., supra,* 378 A.2d at pages 568-569, and *Housing Securities, Inc.* v. *Maine Nat. Bank* (Me. 1978) 391 A.2d 311, 321 [2 A.L.R.4th 650] (holding " 'resale or other use or disposition' " provision of section 5115, subdivision (1) does not apply to guaranty [standby] letters of credit); *In re Kaiser Steel* (Bankr. D. Colo. 1988) 89 Bankr. 150, 152 (issuer of standby letter of credit must pay the full amount of the letter upon beneficiary's draft or demand and certification of creditor's default "regardless of the actual loss or other mitigating factors.").

*Wichita* is not compelling authority for the Bank's position. Significantly, the United States Court of Appeals for the Ninth Circuit reversed the district court, finding the document in question was not a letter of credit, but an ordinary guaranty contract to which different rules applied. (*Wichita Eagle & B. Pub. Co., Inc.* v. *Pacific Nat. Bk., San Fran., supra,* 493 F.2d at pp. 1286-1287.) In any event, the District Court's determination of the damages issue is questionable because the court failed to consider the independence principle in reaching its decision. The transaction in *Wichita,* which was governed by California law, took place before the effective date of the California Uniform Commercial Code. (*Wichita Eagle & Beacon Pub. Co.* v. *Pacific Nat. Bank of S.F., supra,* 343 F.Supp at p. 339, fn. 4.) Thus, the *Wichita* district court did not consider section 5114, subdivision (1), which codifies the independence principle, nor did it consider the independence principle as a common law doctrine in determining the issuing bank's liability. (See *Intraworld Industries, Inc.* v. *Girard Trust Bank* (1975) 461 Pa. 343 [336 A.2d 316, 323-324].) Rather, the *Wichita* court decided the damages issue by applying a pre-Uniform Commercial Code, common law mitigation principle to the unique and specific facts before it.

To the extent *Wichita* can be read to support the proposition that a beneficiary seeking to recover under a standby letter of credit owes the issuer a duty to mitigate damages, and/or the proposition that a beneficiary is only entitled to recover its actual damages after voluntary mitigation, we decline to follow it. We adhere to the weight of authority holding that the issuer of a standby letter of credit does not have the right to inquire into the contractual dispute between its customer and the beneficiary, including the issue of the beneficiary's damages, in considering whether to honor the beneficiary's demand for payment under the letter. To allow such inquiry by the issuer into the underlying contractual dispute would undermine the commercial utility of the standby letter of credit. Absent fraud or forgery,[3] the issuer must honor a draft for payment that conforms to the terms of the letter.

Accordingly, we conclude the court did not err in rejecting the Bank's mitigation arguments in opposition to SDG&E's motion for summary judgment.

---

[3] Section 5114, subdivision (2)(b) allows an issuer to dishonor a draft or demand for payment based on fraud or forgery, as long as the draft or demand is not demanded by a negotiating bank or holder in due course.

## DISPOSITION

The judgment is affirmed.

Work, J., and Huffman, J., concurred.