[No. A084875. First Dist., Div. Three. Apr. 21, 2000.]

UNION PACIFIC CORPORATION et al., Cross-complainants and Respondents, v.
RICHARD WENGERT, Cross-defendant and Appellant.

**COUNSEL**

Misciagna & Colombatto, Andrew M. Klimenko and Michael K. Tcheng for Cross-defendant and Appellant.

Diepenbrock & Costa, Anthony C. Diepenbrock, John P. Cotter and Nora E. Dwyer for Cross-complainants and Respondents Union Pacific Corporation et al.

Carroll, Burdick & McDonough, Daniel M. Crawford and Donald T. Ramsey for Cross-complainants and Respondents LMC Transport Company, Inc., and Bhupinder Singh.

**OPINION**

**PARRILLI, J.**—Since the passage of Proposition 51 in 1986, tort liability for noneconomic damages has been several; the former rule of joint liability was preserved only for economic damages. (Civ. Code, § 1431.2.) In this case, we consider the impact of this change on settling tortfeasors' right to seek comparative equitable indemnity from a nonsettling concurrent tortfeasor. We conclude that comparative equitable indemnity is available only for that portion of a settlement attributable to economic damages, because that is the extent of the underlying joint obligation. A defendant has no right to settle the plaintiff's claim against another party for noneconomic damages. Each defendant is entitled to severally negotiate or litigate its own several liability.

Richard Wengert appeals from a judgment holding him liable for $600,000 of a $3 million settlement negotiated by respondents Union Pacific Corporation, LMC Transport Company, Inc., and Bhupinder Singh. Richard and Linda Carroll had sued the settling parties and Wengert, doing business as Richard's Trailer Inspection Service, for damages arising from an accident at Union Pacific's freight yard in Stockton. Union Pacific contracted with Wengert to inspect tractor-trailer rigs arriving at the freight yard gatehouse. On the day of the accident, Wengert inspected a rig driven by Singh for LMC. Wengert cleared Singh to enter the yard and proceeded to inspect Richard Carroll's rig, which was parked next to Singh's. Carroll and Wengert were standing between the two vehicles when Singh pulled away. At that moment, Carroll took a step back. The wheels of Singh's trailer caught and dragged him, causing horrible injuries.

Union Pacific, LMC, and Singh cross-complained against Wengert for indemnity in the action brought by the Carrolls. During settlement conferences with a mediator, Wengert's offers were rejected as "totally insignificant and not even worth talking about," according to his attorney. Union Pacific, LMC, and Singh reached a settlement with the Carrolls, conditioned on the Carrolls' promise not to settle with Wengert. Wengert's subsequent settlement efforts were rebuffed, the Carrolls dismissed their action against Wengert, and the settling defendants pursued their cross-complaints.

In pretrial briefing and argument, Wengert contended (1) indemnity was only available to the cross-complainants to the extent the settlement reflected liability for economic damages, because comparative equitable indemnity is premised on a joint legal obligation; (2) since the settlement failed to distinguish between economic and noneconomic damages, the court was required to make an allocation; and (3) the settlement was collusive and

against public policy because it barred Wengert from settling with the Carrolls separately. The trial court rejected these claims. It noted the settling parties would have to prove the settlement was a reasonable one, and Wengert would be held liable only for his proportionate share of the economic and noneconomic damages just as if the Carrolls had taken their case to trial.

The court refused to give jury instructions proposed by Wengert that limited the cross-complainants' recovery to economic damages. The court also declined to use Wengert's proposed special verdict form, which called for findings on contributory negligence and on the amount of the Carrolls' economic damages only. The jury was instructed to consider four specific factors in determining whether the settlement was reasonable: (1) the total amount of economic and noneconomic damages claimed by the Carrolls; (2) the nature and extent of their injuries and damages; (3) the negligence of all parties, including Richard Carroll; and (4) the potential exposure of the settling defendants to the risk of an adverse jury verdict.

The jury returned a special verdict finding $3 million a reasonable settlement of all the Carrolls' claims, and allocating the settlement according to the defendants' comparative negligence, as follows: 50 percent to Singh and LMC, 30 percent to Union Pacific, and 20 percent to Wengert. Accordingly, judgment was entered against Wengert for $600,000. The court denied his motion for a new trial or judgment notwithstanding the verdict, which was based partly on the refusal of his proposed jury instructions and verdict form.

■ On appeal, Wengert renews his claim that equitable indemnification can only be based on a joint legal obligation, and therefore the jury should have been required to assess only the reasonable amount of the Carrolls' economic damages. He also contends it was error not to require the jury to reduce his liability based on Carroll's comparative fault. The latter argument is plainly meritless. Carroll did not settle for damages attributable to his own negligence, and the jury was properly instructed to consider his contributory negligence in determining whether the amount of the settlement was reasonable. (Cf. *Torres v. Xomox Corp.* (1996) 49 Cal.App.4th 1, 24 [56 Cal.Rptr.2d 455] [no off-the-top reduction of judgment damages to reflect plaintiff's fault is needed to implement Prop. 51].) However, we agree that only the portion of the settlement attributable to the Carrolls' economic damages was subject to the respondents' indemnity claim.

■ "Equitable indemnity, like subrogation, is not available to a volunteer. It extends to those who pay in performance of a legal duty in order to

protect their own rights or interests. . . . However, one acting in good faith in making payment under a reasonable belief that it is necessary to his protection is entitled to indemnity or subrogation, even though it develops that he in fact had no interest to protect. . . ." (*Aetna Life & Cas. Co. v. Ford Motor Co.* (1975) 50 Cal.App.3d 49, 52-53 [122 Cal.Rptr. 852], citations omitted; accord, *Mullin Lumber Co. v. Chandler* (1986) 185 Cal.App.3d 1127, 1133 [230 Cal.Rptr. 122].) ▮ As a result of Proposition 51, Union Pacific, LMC, and Singh could never be held liable for the Carrolls' noneconomic damages insofar as they were caused by Wengert's negligence. Therefore, they could not have reasonably believed they were protecting their own interests when they purported to settle all the Carrolls' claims.

It is well established that the right to indemnity flows from payment of a joint legal obligation on another's behalf. (Civ. Code, § 1432; *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 114 [32 Cal.Rptr.2d 263, 876 P.2d 1062]; *Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1787 [53 Cal.Rptr.2d 725]; *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 430-431 [261 Cal.Rptr. 626]; *Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc.* (1989) 208 Cal.App.3d 64, 68-69 [255 Cal.Rptr. 800].) Before the enactment of Proposition 51, a defendant who settled the plaintiff's entire claim was entitled to seek indemnification from concurrent tortfeasors for its payment of their joint obligation to the plaintiff. (See *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1197-1198 [246 Cal.Rptr. 629, 753 P.2d 585]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1095, pp. 507-509; *id.* (1999 supp.) p. 270.) Now, however, joint liability is restricted to economic damages, and the right to seek indemnity after settlement is correspondingly limited. (Cf. *Aetna Health Plans of Cal., Inc. v. Yucaipa-Calimesa Joint Unified School Dist.* (1999) 72 Cal.App.4th 1175, 1193-1194 [85 Cal.Rptr.2d 672] [no cross-complaint for indemnity could be maintained by nonsettling tortfeasor against concurrent tortfeasor, where damages sought by plaintiff were purely noneconomic].) The jury in this case should have been instructed to determine the amount of the settlement attributable to economic losses, and Wengert should only have been charged with his proportionate share of that amount.

Respondents urge us to construe Proposition 51 so as to continue the indemnity arrangements developed under the former system of joint and several liability. They adopt the following argument stated by a commentator: "[I]t is not clear that Proposition 51 applies to a settlement that resolves the plaintiff's claim. It provides that each *defendant* is only severally liable for noneconomic damages, and that a separate *judgment* must be rendered

against the *defendant* for that amount. While the term 'defendant' in Proposition 51 has been construed broadly to include all tortfeasors, whether or not present in the action, it may be argued that Proposition 51 applies only to liability that has been apportioned by a trier of fact after trial. As such, it would have no applicability to a settlement that involves a dismissal of the plaintiff's principal action but preserves comparative indemnity rights. In other words, until a trier of fact has fixed the plaintiff's noneconomic damages and each tortfeasor's comparative share therefor, there is nothing to which several liability only attaches, and a settling defendant may pursue an indemnity action in which those matters will be determined.

"As so construed, a defendant would still be able to settle the plaintiff's entire claim and then seek indemnity from other tortfeasors without first having to determine what part of the settlement represents noneconomic damages. Such a construction advances all of the public policy considerations underlying multiparty tort litigation: (1) maximization of recovery to the injured party; (2) encouragement of settlement; and (3) equitable apportionment of liability among all those responsible for the loss. The plaintiff receives quick and complete relief, and there is an ultimate fair apportionment of responsibility. Further, there is no violation of the purpose of Proposition 51, as no tortfeasor will be required to ultimately pay more than its comparative share of plaintiff's noneconomic damages." (5 Levy et al., Cal. Torts (1999) Settling Multiparty Actions, § 74.21[2][b][ii], pp. 74-72.1 to 74-72.2, italics in original, fn. omitted.)

We find this construction inconsistent not only with the fundamental principle that indemnity requires a joint obligation, but also with the terms of Proposition 51. The relevant provisions are: "In any action for personal injury . . . the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (Civ. Code, § 1431.2, subd. (a).) While the second sentence discusses liability allocated by a trier of fact and embodied in a judgment, the first states simply that a defendant's liability for noneconomic damages can only be several. It strains the plain meaning of the statute to consider the several nature of such liability a latent characteristic that springs into being only upon determination by a trier of fact. If liability is firm enough to induce a defendant to settle, it is subject to the unequivocal terms of Proposition 51. When liability is "several only and . . . not joint," we see no justification for permitting one defendant to satisfy the liability of another and then seek to recover for a payment it was never obliged to make.

The policies favoring maximization of recovery, encouragement of settlement, and equitable apportionment (see *Mullin Lumber Co. v. Chandler, supra,* 185 Cal.App.3d at p. 1132) must be viewed in light of the shift from joint and several liability to partial several liability. None of these policies is unduly thwarted by our holding in this case.

Maximization of recovery is in some cases enhanced. A plaintiff who settles with certain defendants and pursues others to trial may well end up with a greater recovery than a full settlement would have yielded. Indeed, some plaintiffs may recover more through settlement and litigation than the total amount of damages ultimately determined by the jury, a result not formerly possible. (See *Hoch v. Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48, 65-68 [29 Cal.Rptr.2d 615].) While the plaintiff must bear the risk of inability to collect from some defendants, it was the express purpose of Proposition 51 to shift that risk away from defendants with "deep pockets." (Civ. Code, § 1431.1.) And while a complete recovery may be delayed because full settlement cannot be obtained from a defendant willing to shoulder the burden of seeking indemnity, this is an inevitable ramification of Proposition 51's restriction on joint and several liability. It is analogous to the added expense and effort required to sue all tortfeasors to obtain a complete recovery, as opposed to the formerly available practice of pursuing a limited number of defendants who in turn could assert their indemnity rights against concurrent tortfeasors. (See *Evangelatos v. Superior Court, supra,* 44 Cal.3d at p. 1215.)

No defendant should be deterred from settling its own liability with the plaintiff. By obtaining a determination of good faith settlement, defendants can protect themselves from claims for contribution or indemnity by other tortfeasors, thus limiting their liability with more assurance than is gained by settling and proceeding with an indemnity claim. (Code Civ. Proc., § 877.6; see *Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 352-353 [87 Cal.Rptr.2d 856].) Alternatively, the option of settling the entire economic damage claim and seeking comparative indemnity for that payment remains open.

The goal of equitable apportionment is furthered by barring defendants from seeking indemnity for their settlement of concurrent tortfeasors' several liability. Each defendant is free to make its own assessment of the relative risks and benefits of settlement and litigation. Defendants settling in good faith cap their liability at an amount they deem appropriate in view of the hazards of litigation. If the plaintiff takes other defendants to trial, the trier of fact determines the fault attributable to all parties and determines the plaintiff's economic and noneconomic damages. The nonsettling defendants

receive an offset for the portion of any settlement that reflects economic damages. (See, e.g., *Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1320-1322 [87 Cal.Rptr.2d 363]; *Torres v. Xomox Corp., supra,* 49 Cal.App.4th at pp. 33-37.) If a settling defendant pursues an indemnity claim against a nonsettling defendant, the jury apportions the economic damages in its verdict and each defendant remains responsible for settling or litigating its own several liability for noneconomic damages.

We note that the equity of the apportionment now before us is questionable. Wengert was held liable for part of a settlement that included not only the settling parties' estimate of the Carrolls' total damages, but also an amount the respondents were willing to pay to avoid the risk of an adverse verdict and the exposure of going to trial. (See *Hoch v. Allied-Signal, Inc., supra,* 24 Cal.App.4th at pp. 67-68.) This may have been an acceptable result when defendants' liability was fully joint. (*Mullin Lumber Co. v. Chandler, supra,* 185 Cal.App.3d at pp. 1134-1135; but see *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital, supra,* 8 Cal.4th at pp. 118-119 [amount of reasonable settlement is not necessarily determinative on indemnity claim; independent proof of damages may be required].) However, when liability for noneconomic damages is several only, a nonsettling defendant cannot fairly be required to indemnify settling defendants for a share of the amount they paid to escape the necessity of defending themselves against claims for which they alone were liable.

Thus, even though respondents are correct when they insist that Wengert paid no more than his proportionate share of the settlement, this does not mean that his liability for noneconomic damages was properly limited. Settlement dollars are not the equivalent of damages. (*Hoch v. Allied-Signal, Inc., supra,* 24 Cal.App.4th at p. 67.) Indemnity principles permit a settling defendant to recover from a jointly liable nonsettling defendant on the basis of comparative fault. But comparative fault is not enough to support a settling defendant's indemnity claim in the absence of joint liability. A different rule would subject the nonsettling defendant to liability for a settlement to which it never agreed, even though it alone was liable for a portion of the plaintiff's claims. Where liability is several only, each defendant should be captain of its own ship.

We acknowledge that the procedures involved in partial settlement, litigation, and allocation of economic and noneconomic damages are often complicated. A look at the case law in this area quickly confirms the difficulty of resolving issues of comparative liability among settling and nonsettling parties. Different configurations of parties, facts, litigation tactics, and statutory limitations on liability yield a bewildering variety of solutions. Nevertheless, the complications in this case flow directly from the compromise

between purely joint and purely several liability enacted by Proposition 51. (See *Evangelatos v. Superior Court, supra,* 44 Cal.3d at p. 1198.) The strategy pursued by the respondents is a casualty of a simply worded reform whose application gives rise to a labyrinth of possible outcomes.

## DISPOSITION

The judgment is reversed. Any retrial shall be limited to the issue of what percentage of the settlement represents a reasonable compromise of Richard Carroll's claim for economic damages. Wengert shall recover his costs on appeal.

McGuiness, P. J., and Corrigan, J., concurred.

A petition for a rehearing was denied May 22, 2000, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied August 9, 2000.