In re James S. HAMADA, Debtor.

James S. Hamada, Appellant,

v.

Far East National Bank, a California
Corporation, Appellee.

No. 00–56865.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2002.

Filed May 29, 2002.

David A. Tilem & C. Casey White, Tilem & White, LLP, Glendale, CA, for appellant James S. Hamada.

Adam A. Lewis, Morrison & Foerster, San Francisco, CA, for appellee Far East National Bank.

Before: THOMAS and RAWLINSON, Circuit Judges, and ARMSTRONG, District Judge.[1]

THOMAS, Circuit Judge.

In this appeal, we consider, *inter alia*, the rights of statutory and equitable subrogation held by the issuer of a standby letter of credit. Under the circumstances presented by this case, we conclude that no right of subrogation existed. Therefore, we reverse the judgment of the district court.

I

James S. Hamada was the defendant in a breach of fiduciary duty and fraud action filed by his former partner in medicine. The judgment provided for damages of $500,000, punitive damages of $1.25 million, and prejudgment interest. Hamada appealed, and sought a supersedeas bond to stay execution of the judgment while his appeal was pending. He applied for a bond with Fidelity and Deposit Company of Maryland ("Fidelity"), and Fidelity agreed to provide the supersedeas bond if Hamada paid certain fees, indemnified Fidelity if the bond were to be called, and

---

1. The Honorable Saundra Brown Armstrong, United States District Judge in and for the Northern District of California, sitting by designation.

posted a standby letter of credit for the full amount. Hamada secured the letters of credit from Imperial and Far East banks, which agreed to provide the letters in exchange for Hamada's indemnification and provision of real and personal property as collateral. The letters were issued, and Fidelity issued the supersedeas bond.

The California Court of Appeal modified, vacated and affirmed parts of the 1990 judgment and remanded the case to the trial court for further proceedings. Hamada filed for bankruptcy in October 1995. In January 1996, Michelson filed an adversary proceeding in the bankruptcy court seeking a determination that his claims under the court judgment were non-dischargeable. After an order from the bankruptcy court granting Hamada's motion for relief from the automatic stay, the California trial court entered another judgment in the fraud action in May 1996. Nearly a year later, in July 1997, Michelson obtained a final judgment from the bankruptcy court holding that the damages, punitive damages and prejudgment interest awarded in the state case were non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).

In November 1997, the California Court of Appeal again reversed the trial court's judgment, and offered Michelson a remittitur reducing the punitive damages award to $500,000, which Michelson accepted. Michelson then made a demand on Fidelity's supersedeas bond for payment of the judgment. Fidelity sought payment from Hamada, who told the surety that he could not pay the judgment or satisfy his obligation to indemnify Fidelity. Fidelity then presented the letters of credit to Imperial and Far East, and each bank honored its letter and paid Fidelity in excess of $1.2 million. Fidelity then executed assignment agreements in favor of Far East and Imperial, assigning any rights it

had to subrogation based upon its partial satisfaction of the Michelson judgment.

Far East and Imperial filed an adversary action against Hamada one year later seeking non-dischargeability of the debts owed to them. The parties stipulated to the material facts, and filed cross-motions for summary judgment. The Bankruptcy Court conducted a hearing on the matter in March 1999, and in March 2000 issued an order granting Hamada's motion and denying the motion filed by Imperial and Far East. The court held that the banks' claims were purely contractual and that they were not entitled to subrogation to the non-dischargeability of the Michelson judgment. The court found that the banks' direct claims arising from the letters of credit were dischargeable and that their failure to file timely non-dischargeability complaints precluded them from seeking non-dischargeability "at this late date."

The court also rejected the banks' claim that they were entitled to equitable subrogation, and rejected their contention that the assignment agreements had assigned any subrogation rights held by Fidelity to Far East and Imperial. The Bankruptcy Court determined that the agreements were unenforceable for lack of consideration and noted that the agreements "appear to be merely a litigation ploy by the Banks in an attempt to bootstrap themselves into a more favorable position than they bargained for in their agreements" with Hamada and Fidelity.

Far East appealed to the District Court, which reversed the bankruptcy court's ruling, essentially because the Michelson judgment was based on Hamada's fraudulent conduct. The District Court issued a judgment reversing the Bankruptcy Court and finding Far East entitled to subrogation of the non-dischargeable Michelson claims. Hamada timely appeals.

## II

■ We review a district court's decision on appeal from a bankruptcy court de novo. *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1084 n. 9 (9th Cir.2000) (en banc). "We independently review the bankruptcy court's decision and do not give deference to the district court's determinations." *Preblich v. Battley*, 181 F.3d 1048, 1051 (9th Cir. 1999) (citation omitted). We review the bankruptcy court's findings of fact for clear error; we review conclusions of law and mixed questions of law and fact de novo. *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir.1998). The question of whether a claim is non-dischargeable presents mixed issues of law and fact, which we review de novo. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir.1997) (en banc).

## III

Far East failed to file an adversary proceeding objecting to discharge of its debt within the statute of limitations. *See* Fed. R. Bankr.P. 4007; *State Bank & Trust, N.A. v. Dunlap (In re Dunlap)*, 217 F.3d 311, 315 (5th Cir.2000) ("The strict time limitation placed upon creditors who wish to object to a debt's dischargeability reflects the Bankruptcy Code's goal of providing debtors with a fresh start.").

Thus, unless Far East is legally subrogated to the Michelson non-dischargeability judgment by virtue of its payment to Fidelity, Far East's claims were subject to discharge in the Hamada bankruptcy.

### A

■ In general terms, subrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right. It is a derivative right, acquired by satisfaction of the loss or claim that a third party has against another. Subrogation places the party paying the loss or claim (the "subrogee") in the shoes of the person who suffered the loss ("the subrogor"). Thus, when the doctrine of subrogation applies, the subrogee succeeds to the legal rights and claims of the subrogor with respect to the loss or claim. *See, e.g., Amer. Surety Co. of New York v. Bethlehem Nat. Bank*, 314 U.S. 314, 317, 62 S.Ct. 226, 86 L.Ed. 241 (1941) (discussing equitable doctrine of subrogation in surety context); *Han v. United States*, 944 F.2d 526, 529 (9th Cir.1991) (discussing equitable subrogation generally).

■ There are various types of subrogation, most commonly categorized as "conventional" or "contractual" subrogation, "legal" or "equitable" subrogation, and statutory subrogation. "Conventional" or "contractual" subrogation rights arise from an express or implied agreement between the subrogor and subrogee. *Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 626 (7th Cir. 2001). "Equitable subrogation is a legal fiction, which permits a party who satisfies another's obligation to recover from the party 'primarily liable' for the extinguished obligation." *In re Air Crash Disaster*, 86 F.3d 498, 549 (6th Cir.1996). The right of "legal" or "equitable" subrogation arose as a "creature of equity" and "is enforced solely for the purpose of accomplishing the ends of substantial justice." *Memphis & L.R.R. Co. v. Dow*, 120 U.S. 287, 302, 7 S.Ct. 482, 30 L.Ed. 595 (1887). Statutory subrogation, as one might expect, occurs by virtue of a right created by statute. *See, e.g., Carter v. Derwinski*, 987 F.2d 611, 614 (9th Cir.1993) (en banc). Far East alleges that it is subrogated to the Michelson non-dischargeability judgment by virtue of a right of statutory subrogation under the Bankruptcy Code and a right of equitable subrogation.

## B

Far East claims a right of statutory subrogation under the Bankruptcy Code pursuant to 11 U.S.C. § 509(a), which provides:

> Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

The legislative history to § 509 indicates that it was designed to describe rights available to a limited class of creditors, namely, true co-debtors who have actually paid a debtor's obligation to the third party in question:

> This section is based on the notion that the only rights available to a surety, guarantor, or comaker are contribution, reimbursement, and subrogation. The right that applies in a particular situation will depend on the agreement between the debtor and the codebtor, and on whether and how the payment was made by the codebtor to the creditor.

H.R.Rep. No. 95–595, 95th Congr., 1st Sess. (1977) p. 358, U.S. Code Cong. & Admin. News at 5963, 6314.

For our purposes, the critical question under § 509(a) is whether Far East was "liable with the debtor on, or has secured, a claim of a creditor against a debtor." Fidelity, as a surety or guarantor of Hamada's obligation, satisfies this requirement. However, Far East, as the issuer of a letter of credit rather than a guarantor of Hamada's debt, is in a different position with respect to the Michelson debt. A letter of credit "is an undertaking by the issuing bank ... that it will pay a draft drawn on it ... upon presentation of specified documents." *H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550, 552 (9th Cir.1979).[2]

"[T]he key distinction between letters of credit and guarantees is that the issuer's obligation under a letter of credit is primary whereas a guarantor's obligation is secondary—the guarantor is *only* obligated to pay if the principal defaults on the debt the principal owes." *Tudor Dev. Group, Inc. v. United States Fidelity & Guaranty Co.*, 968 F.2d 357, 362 (3d Cir. 1992). A bank issuing a letter of credit, unlike a guarantor, is not obligated "until after its customer fails to satisfy some obligation, [and] it is satisfying its own absolute and primary obligation to make payment rather than satisfying an obligation of its customer." *Id.* Thus, as opposed to the guaranty given by a surety, in a letter of credit transaction the bank's obligation under the letter of credit is independent of the underlying contract. *Id.* See also *San Diego Gas & Elec. Co. v. Bank Leumi*, 42 Cal.App.4th 928, 50 Cal. Rptr.2d 20, 24 (1996) (discussing the "independence principle" as the primary characteristic of letters of credit).

In short, issuers of letters of credit are not "liable with" the debtor on the obligation owed to the creditor; therefore, letter of credit issuers are not eligible under § 509 for statutory subrogation in this context. *Slamans v. First Nat'l Bank & Trust Co. (In re Slamans)*, 69 F.3d 468, 475–76 (10th Cir.1995) (letter of credit issuer does not satisfy the plain language requirements of § 509); *Kaiser Steel Corp. v. Bank of Am. Nat'l Trust & Savings Assoc. (In re Kaiser Steel Corp.)*, 89 B.R.

**2.** Under California law, which applies to the substance of the underlying transaction, a letter of credit is "an engagement by a bank or other person made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." Cal. Com.Code § 5103(a).

150, 153 (Bankr.D.Colo.1988) (same); *but see In re Valley Vue Joint Venture*, 123 B.R. 199, 204 (Bankr.E.D.Va.1991) (rejecting *Kaiser's* analysis and holding that issuer of letter of credit is "an entity that is liable with the debtor" under 11 U.S.C. § 509(a)). Thus, Far East's claim for statutory subrogation under the Bankruptcy Code fails.

## C

■ Far East also claims a right to assert the Michelson non-dischargeability judgment by virtue of equitable subrogation. Equitable subrogation is a doctrine governed by state law. *Mort v. United States*, 86 F.3d 890, 893 (9th Cir.1996). Thus, we must turn to the law of California, which provides for equitable subrogation if the party seeking subrogation meets five specific criteria:

> First, the claimant must have paid the debt owed to the lienholder in order to protect the claimant's own interest. Second, the claimant must not have acted as a volunteer. Third, the claimant could not have been primarily liable for the debt he paid. Fourth, the claimant must have paid the entire debt owed to the lienholder. And, fifth, the subrogation must not work an injustice to the rights of others.

*Fidelity Nat. Title Ins. Co. v. U.S. Dept. of the Treasury, I.R.S.*, 907 F.2d 868, 870 (9th Cir.1990) (citations omitted). *See also Simon v. United States*, 756 F.2d 696, 698–99 (9th Cir.1985) (applying five equitable principles of subrogation in context of land purchase at a county tax sale).

The first requirement "extends to those who pay in performance of a legal duty in order to protect their own rights or interests." *Union Pac. Corp. v. Wengert*, 79 Cal.App.4th 1444, 95 Cal.Rptr.2d 68, 71 (2000). Because Far East had a legal duty to pay Fidelity, it "acted for its own interest" when it honored the letter of credit. Thus, Far East satisfies the first factor.

■ The second requirement is that the subrogee claimant may not have acted as a volunteer. In this case, the Bankruptcy Court determined that Far East qualified as a volunteer because it entered into its agreement with Hamada for profit and with full knowledge of the non-dischargeable nature of the claim. However, under California law, a party is considered a volunteer under the doctrine if, "in making a payment, they have no interest of their own to protect, they act without any obligation, legal or moral, and they act without being requested to do so by the person liable on the original obligation." *Mort*, 86 F.3d at 894. Here, Far East did not act "without any obligation"—in fact it acted *because of* its obligation. Therefore, Far East does not qualify as a volunteer, and has satisfied the second requirement.

The third requirement is that Far East not be primarily liable for the debt it paid. Because it was primarily liable on the letter of credit, Far East does not satisfy this element. As the Bankruptcy Court correctly observed, Far East paid Fidelity because of its contractual obligation under the letter of credit agreement, which was independent of the obligation Fidelity owed Michelson under the surety agreement. The California Supreme Court explained the concept this way:

> the rules applicable to surety relationships do not govern the relationships between the parties to a letter of credit transaction.... Nor does the beneficiary of a credit owe any obligations to the issuer; literal compliance with the letter of credit's terms for payment is all that is required.

*Western Sec. Bank v. Superior Court*, 15 Cal.4th 232, 62 Cal.Rptr.2d 243, 253, 933 P.2d 507 (1997) (citations omitted).

The independence of the obligations of a letter of credit issuer in this context was underscored by the California Court of Appeal in *San Diego Gas & Elec. Co.*, 50 Cal.Rptr.2d at 23:

> Three contractual relationships exist in a letter of credit transaction. Underlying the letter of credit transaction is the contract between the bank's customer and the beneficiary of the letter of credit, which consists of the business agreement between these parties. Then there is the contractual arrangement between the bank and its customer whereby the bank agrees to issue the letter of credit, and the customer agrees to repay the bank for the amounts paid under the letter of credit.... Finally, there is the contractual relationship between the bank and the beneficiary of the letter of credit created by the letter of credit itself. The bank agrees to honor the beneficiary's drafts or demands for payment which conform to the terms of the letter of credit.

*Id.* (citations omitted).

For these reasons, Far East must be considered primarily liable on the debt upon which its claim is founded: its debt to Fidelity under the letter of credit agreement. Thus, Far East cannot satisfy the third element.

The fourth requirement for the application of equitable subrogation under California law is the claimant must have paid the entire debt owed by the debtor. Although there is some dispute about the precise amount of the payment, Hamada does not seriously contest that the debt was extinguished by virtue of the payment. Therefore, for the purposes of this analysis, we will presume that Far East met this requirement.

The final element for a finding of equitable subrogation under California law is that the subrogation must not work an injustice to the rights of others. Far East argues that because the Michelson nondischargeability judgment was based on Hamada's fraud, the equities tip in its favor. The district court apparently found this argument decisive.[3] Hamada contends that he has suffered enough due to the underlying litigation and the bankruptcy.

Neither argument addresses the salient inquiry. In this context, the rights that must be balanced are the rights of other creditors in the Hamada bankruptcy. By declaring the Far East debt to be nondischargeable, the court would be placing Far East in a much better position than other similarly-situated creditors. As to Michelson, this result was not only eminently fair, but dictated by the Bankruptcy Code due to the finding of the Bankruptcy Court that Hamada had committed a breach of fiduciary duty and fraud. However, Far East is not in the same position as Michelson. Hamada committed no fraud on Far East. Rather, Far East consciously undertook to grant a letter of credit to Fidelity with full knowledge of Michelson's allegations against Hamada, including the alleged fraud. It did so as a commercial transaction in which Hamada

---

**3.** The district court's order and judgment does not reflect its reasoning. However, at the time set for the hearing on the motion, the court observed, among other extraneous matters, that: "I think the intent of the law should be and the better policy argument is there is no policy that I am aware of to let people get a better deal or get out of any part of their debt and simply by reason of the fact that it was a fraud and that otherwise they'd get a fresh start.... The volunteer here, in my judgment, was the debtor, who had the assets. He agreed; he didn't have to, but he did agree. Put up the assets, they went down in value. Had he not done it, the other person wouldn't have volunteered, so he actually induced the alleged volunteer."

pledged certain real estate assets as collateral. Far East, in accepting that collateral, assumed the risk that the collateral might be insufficient to satisfy Michelson's claim. Moreover, it failed to take appropriate action in the bankruptcy court to protect its interest. Thus, given these circumstances, the equities that Michelson might assert vis-a-vis other creditors do not accrue equally to Far East. Having entered into the commercial transaction with full knowledge of Hamada's alleged wrongdoing, Far East cannot, like Casablanca's Captain Renault, express shock at having now "discovered" it. Rather, Far East is in the same position as every other disappointed commercial creditor to whom Hamada owed a debt.

Nor has Hamada unjustly been removed from his responsibility to pay the Michelson judgment. To the contrary, Hamada made financial arrangements that resulted in satisfaction of the judgment. The defrauded creditor in whose favor the bankruptcy court entered a non-dischargeability judgment has received full payment, and there is no claim that Hamada committed fraud against Far East that would entitle it to preferential treatment over other creditors to whom Hamada owes money. Hamada has also not been relieved of his responsibility to Far East; however, that responsibility will be discharged through operation of the pro rata distribution of his assets to all creditors. For these reasons, the fifth element of equitable subrogation also is unsatisfied.

Far East argues that application of California's equitable subrogation doctrine does not depend upon "slavish" adherence to the five criteria enunciated by the California Supreme Court. It is true that California courts have, on occasion, liberally construed the doctrine. *See, e.g., Johnson v. Kristovich (In re Johnson's Estate)*, 240 Cal.App.2d 742, 50 Cal.Rptr. 147, 149 (1966). Indeed, the California Supreme Court has held explicitly that equitable subrogation is not limited to circumstances where the five factors are met. *Caito v. United Calif. Bank*, 20 Cal.3d 694, 144 Cal.Rptr. 751, 756–57, 576 P.2d 466 (1978). However, California courts have yet to extend the doctrine to cases in which the purported subrogee is primarily liable on the debt and, in this case, the equities do not fall in Far East's favor when the rights of the other creditors are considered.

### D

Far East also claims a right to claim an exception to discharge based on the assignment of Fidelity's subrogation rights. However, we have previously held that sureties do not have a right of subrogation under such circumstances. *See Nat'l Collection Agency v. Trahan*, 624 F.2d 906, 908 (9th Cir.1980).[4] Thus, Far East did not acquire any rights to the Michelson non dischargeability judgment by assignment of the surety's rights.[5]

### IV

Because Far East is neither entitled to statutory nor equitable subrogation, its claim for declaratory relief necessarily

---

4. In *Trahan,* a surety contracted with a debtor to post bond to insure the debtor's payment of state sales taxes. Trahan failed to pay the taxes, and an assignee of the surety satisfied the obligation. When Trahan filed bankruptcy, the assignee sought to except the debt from discharge on the theory that it was subrogated to the state's non-dischargeable tax claim. Citing "the overriding policy favoring dischargeability," we rejected this argument and declined to find a right of subrogation.

5. Given this holding, we need not reach the question of whether a judgment of non-dischargeability is assignable under the Bankruptcy Code.

fails. The bankruptcy court was entirely correct in so holding. Thus, we must reverse the judgment of the district court which reversed the judgment of the bankruptcy court.

**REVERSED.**

ARMSTRONG, District Judge, dissenting:

I do not concur with the majority's analysis and conclusion with respect to Appellee Far East National Bank's claim for equitable subrogation, and as such, I respectfully dissent from that portion of the majority's opinion. To place my comments in their proper context, it is helpful to first briefly review the salient facts of this case.

I.

In or about 1985, James S. Hamada, M.D., ("Hamada") was sued in Los Angeles County Superior Court by his former medical partner G. Karlin Michelson, M.D., ("Michelson") for fraud and breach of fiduciary duty. The matter was tried and a jury returned a verdict in favor of Michelson. The jury awarded Michelson compensatory damages in the amount of $500,000 and $1.25 million in punitive damages. On February 2, 1990, the trial court entered judgment in accordance with the jury's verdict.

Hamada appealed and was required to post a supersedeas bond to stay enforcement of the judgment. He applied to Fidelity & Deposit Company of Maryland ("the Surety") to post the requisite bond. As a condition of issuing the bond, the Surety required Hamada to sign an indemnification agreement secured by standby letters of credit. Hamada obtained letters of credit from Appellee Far East National Bank ("Far East") and Imperial Bank ("Imperial") which named the Surety as beneficiary. Hamada executed indemnity agreements in favor of each issuing bank which were secured by certain of his real and personal property.

In October 1995, Hamada filed for bankruptcy under Chapter 11 of the Bankruptcy Code. In January 1996, Michelson filed an adversary action in the bankruptcy court and obtained a determination that his judgment was not dischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).

Eventually, the California Court of Appeal affirmed the jury's finding of liability but reduced the amount of the judgment.[1] Michelson made a demand upon the Surety for satisfaction of the judgment. The Surety provided notice of the demand to Hamada who, in turn, directed the Surety to present a request to Far East and Imperial for payment pursuant to the standby letters of credit. Far East and Imperial honored their agreements and collectively tendered payment in excess of $2.5 million to the Surety, which it in turn paid to Michelson. The Surety then expressly assigned all of its rights against Hamada to Far East.

Far East and Imperial then filed an adversary action in bankruptcy court seeking a declaration that the debt owed by Hamada to them under the letters of credit was non-dischargeable. They based this petition on the theory that they were equitably subrogated to the rights of Michelson through the Surety, or alternatively, that such rights were assigned to them by the Surety. Upon considering the parties' cross-motions for summary judgment, the

---

1. On November 7, 1997, the California Court of Appeal issued its decision in which it gave Michelson the option of accepting a reduced punitive damage award of $500,000 or to proceed with a new trial on the issue of punitive damages. Michelson opted to accept a remittitur of $500,000 for the punitive damage award.

bankruptcy court ruled in favor of Hamada, finding that the debt was dischargeable.

Far East appealed to the district court which reversed the bankruptcy court's decision. Hamada now appeals the district court's ruling that the debt was not dischargeable. As noted, the majority believes that the district court erred in reversing the bankruptcy court's ruling in favor of Hamada. I cannot agree with such a conclusion and would affirm the district court.

## II.

### A. Overview of Equitable Subrogation

"Equitable subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to 'step into the shoes' of the loser and pursue recovery from the responsible wrongdoer." *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 21 Cal.App.4th 1586, 1595–96, 26 Cal.Rptr.2d 762, 767 (1994). The purpose of this doctrine is "to place the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged, and to relieve entirely the insurer or surety who indemnified the loss and who in equity was not primarily liable therefor." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1296, 77 Cal.Rptr.2d 296 (1998).

To invoke the remedy of equitable subrogation, five factors generally must be satisfied: (1) Payment was made by the subrogee to protect his own interest; (2) the subrogee has not acted as a volunteer; (3) *the debt paid was one for which the subrogee was not primarily liable;* (4) the entire debt has been paid; and (5) subrogation would not work any injustice to the rights of others. *Han v. United States,*

944 F.2d 526, 529 (9th Cir.1991); *Caito v. United Cal. Bank,* 20 Cal.3d 694, 704, 576 P.2d 466, 144 Cal.Rptr. 751 (1978). "Equitable subrogation is a *broad equitable remedy,* not limited to circumstances where these five factors are met...." *Caito,* 20 Cal.3d at 704, 144 Cal.Rptr. 751, 576 P.2d 466 (emphasis added).

### B. Primary Liability

The majority opines that Far East may not equitably subrogate its claim against Hamada due to the absence of the third and fifth factors. With regard to the third factor concerning the issue of primary liability, the majority concludes that Far East was primarily liable for the debt which it paid; to wit, the *letter of credit* which it issued in favor of the Surety. The majority reasons that the letter of credit agreement between Far East and the Surety created a *separate and independent obligation* for which Far East bore primary responsibility to pay. As support for this proposition, the majority relies on *San Diego Gas & Elec. Co. v. Bank Leumi,* 42 Cal.App.4th 928, 933, 50 Cal.Rptr.2d 20 (1996), and *Western Sec. Bank v.Super. Ct.,* 15 Cal.4th 232, 933 P.2d 507, 62 Cal.Rptr.2d 243 (1997), both of which confirm the "independent" nature of letters of credit. *Western Sec. Bank,* 15 Cal.4th at 248, 62 Cal.Rptr.2d 243, 933 P.2d 507 (recognizing that an issuer has the "primary obligation" to pay on letter of credit such that "literal compliance with the letter of credit's terms for payment is all that is required."); *San Diego Gas & Elec. Co.,* 42 Cal.App.4th at 934, 50 Cal.Rptr.2d 20 (noting that the obligation to pay on a letter of credit is "independent" of any underlying agreement). However, for purposes of equitable subrogation, the question is *not* whether Far East was primarily liable under the letter of credit agreement. Rather, the relevant question

is *whether Far East was primarily liable for payment of the underlying judgment.*

The approach advocated by Hamada, and followed by the majority, derives from authority which erroneously equates an issuer's primary obligation to pay on a letter of credit with the "primarily liable" inquiry germane to equitable subrogation. Specifically, Hamada draws the Court's attention to *Kaiser Steel Corp. v. Bank of Am. National Trust and Savings Ass'n,* 89 B.R. 150, 153 (Bankr.D.Colo.1988), which ruled that an issuer of a standby letter of credit could not pursue a claim for statutory subrogation under 11 U.S.C. § 509.[2] The court reasoned that a letter of credit creates an independent obligation of the issuer to pay on demand, irrespective of any defenses arising from the underlying agreement. *Id.* at 152. In so doing, the court collapsed the "independent" liability of the issuer to pay upon demand with "primary" liability required under the doctrine of equitable subrogation. Based on such reasoning, the court concluded that "[w]hen the issuer pays *its own* debt it cannot step into the shoes of a creditor to seek subrogation ... from the debtor." *Id.* at 153.

Unfortunately, the *Kaiser* court's analysis is flawed. The mere fact that a letter of credit imposes upon the issuer an independent obligation to make payment once a demand is made does not convert the issuer to the "primary" obligor within the meaning of the equitable subrogation doctrine. This conclusion is supported by *In re Valley Vue Joint Venture,* 123 B.R. 199 (Bankr.E.D.Va.1991). In *Valley Vue,* the court criticized the *Kaiser* opinion for failing to recognize the critical distinction between the *primary obligation to honor a letter of credit* and the *primary obligation to repay a debt or obligation:*

The *Kaiser* court correctly observed that an issuer's obligation to honor a standby letter of credit is considered a "primary" obligation. .... However, *the Kaiser court failed to distinguish between the primary liability of a debtor to its creditor to repay a loan and the primary obligation of the issuer to its beneficiary to honor a letter of credit.* When a standby credit supporting a loan is honored, the issuer [footnote] admittedly is satisfying its obligation as a primary obligor to honor the standby credit, but at the same time it is in fact satisfying a debt for which a person other than the issuer is primary liable. This distinction, although not recognized by the Debtor or the *Kaiser* court, is critical.[Footnote] *An issuer is not primarily liable on the debt supported by its standby credit.*

*Id.* at 204 (emphasis added). The court explained that the "primary obligation" of an issuer to pay on a letter of credit simply "goes to the issue of whether the issuer can *avoid* its obligation by relying on the underlying transactional defenses," and not to whether it is "primarily liable" for payment of the underlying debt. *Id.* at 206; *see also San Diego Gas & Elec. Co.,* 42 Cal.App.4th at 933, 50 Cal.Rptr.2d 20 (noting that an issuer of a letter of credit is not considered the "primary obligor" with respect to *the underlying debt or obligation* ).

The majority opinion also overlooks this distinction, and instead, assumes that Far East's independent obligation under the letter of credit is dispositive. However, the majority does not explain how such independence necessarily compels the conclusion that *the relevant obligation* for which the issuer bears primary responsi-

**2.** Although the court was addressing the matter of statutory subrogation, it applied the five-part test applicable to equitable subrogation. *Kaiser,* 89 B.R. at 153.

bility is the obligation to honor payment of the letter of credit. Indeed, under this reasoning, an issuer of a letter of credit could *never* apply the doctrine of equitable subrogation because it will, by definition, always be primarily liable for *that* obligation. Such a rigid application of the doctrine cannot be reconciled with California's decidedly flexible approach to equitable subrogation. *See St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.,* 65 Cal.App.3d 66, 71, 135 Cal.Rptr. 120 (1976) (noting that equitable subrogation is "to be *liberally applied* to promote justice ....") (emphasis added).

Moreover, to focus solely on Far East's obligations attendant to the letter of credit is inconsistent with the purpose of equitable subrogation, which is to place the burden for a loss on the party *ultimately responsible for the loss. Caito,* 20 Cal.3d at 704, 144 Cal.Rptr. 751, 576 P.2d 466. As such, in the context of equitable subrogation, the proper focus should be on *which party* is primarily liable for payment of *the underlying obligation.* In this case, the underlying obligation is *the Michelson judgment*—an obligation for which Hamada should bear primary responsibility. Therefore, it is Hamada—not Far East— who should be deemed "primarily liable" for satisfaction of the Michelson judgment.[3]

### C. Injustice to the Rights of Others

Next, the majority concurs with the bankruptcy court's conclusion that the equities do not favor Far East. The majority reasons that dischargeability was "eminently fair" with respect to Michelson, since the latter was a direct victim of Hamada's fraud. In contrast, the majority notes that Hamada "committed no fraud on Far East" and dismisses Far East's

loss as the result of a conscious business decision. In other words, since Far East knowingly accepted certain of Hamada's real estate holdings as collateral, it automatically assumed the risks attendant to such an arrangement. The majority notes that it was only after the value of these assets declined that Far East was left holding the proverbial bag. As a result, the majority reasons that declaring Hamada's debt to Far East non-dischargeable is inappropriate because it would unfairly place Far East "in a much better position relative to the other creditors."

The majority's supposition that dischargeability is reasonable with respect to Michelson-but not as to Far East—is ostensibly at odds with the fundamental purpose of the dischargeability under the Bankruptcy Code. Indeed, the same policy considerations underlying the bankruptcy court's finding that the judgment against Hamada was non-dischargeable as to Michelson should apply with equal force to Far East. The bankruptcy court found the Michelson judgment non-dischargeable under various subsections of 11 U.S.C. § 523(a). The purpose of these exceptions to discharge is to " 'prevent a debtor from retaining the benefits of property obtained by fraudulent means and *to ensure that the relief intended for honest debtors does not go to dishonest debtors.*' " *In re Slyman,* 234 F.3d 1081, 1085 (9th Cir.2000) (quoting 4 Collier on Bankruptcy ¶ 523.08[1][a] (15th ed. rev.2000)) (emphasis added). Yet, that is precisely what the majority's decision does—it allows Hamada to escape any liability for payment of the Michelson judgment.

It is also difficult to harmonize the majority's analysis with the fundamental purpose of equitable subrogation, which is to

---

**3.** Notably, the bankruptcy court agreed that Hamada should bear such responsibility as

evidenced by its determination that the Michelson judgment was not dischargeable.

place "the burden for a loss on the party ultimately liable or responsible for it...." *Fireman's Fund Ins. Co.*, 65 Cal.App.4th at 1296, 77 Cal.Rptr.2d 296. That burden should be borne by Hamada, and Hamada alone. In this respect, it is important to note that a jury found that Hamada had defrauded and breached his fiduciary duty to his business partner. The fact that the jury imposed a significant punitive damage award underscores the particularly egregious nature of Hamada's misconduct. *See Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal.App.3d 1149, 1154, 230 Cal.Rptr. 276, 278 (1986) ("Punitive damages are appropriate ... only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate.").

And yet, despite the jury's verdict and despite having lost on his state court appeal, the majority proposes to wipe the slate clean and absolve Hamada of *any responsibility* for the judgment rendered against him based on the "equities" of this case. With this I cannot agree. Hamada should not be placed in a better position simply by virtue of the fact that he chose to appeal and sought to stay payment of the judgment by obtaining a supersedeas bond. I am also concerned that the majority's ruling could have the potential of chilling access to the courts. Under today's decision, banks must now assume greater risk in issuing standby letters of credit. This could, in turn, make it more difficult for litigants to secure the requisite bond to pursue appeal. At bottom, a decision in favor of Hamada is hardly equitable. Therefore, contrary to the majority, I would find that Far East has met all of the requisite elements necessary for equitable subrogation.

### III

For the reasons stated above, I do not concur with the majority that Far East should bear responsibility for payment of the Michelson judgment. That responsibility lies with Hamada—and Hamada alone. Accordingly, I would affirm the district court and respectfully dissent from the Court's opinion.