MEMORANDUM *
Heller Ehrman LLP petitions for review of the district court’s affirmance of a Bankruptcy Court’s order allowing K. William Neuman’s claim for $1,161,066.43 allegedly owed under an employment contract. Because we conclude Neuman was a shareholder at the time of dissolution, we reverse.
We review a bankruptcy court’s findings of fact for clear error and its conclusions of law de novo. In re Int’l Fibercom, Inc., 503 F.3d 933, 940 (9th Cir. 2007). Mixed questions of law and fact are reviewed de novo. Hamada v. Far E. Nat’l Bank, 291 F.3d 645, 649 (9th Cir. 2002). “We review the interpretation and meaning of contract provisions de novo.” DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd., 268 F.3d 829, 836 (9th Cir. 2001) (citation omitted). ‘We also review de novo the determinations of whether contract language is ambiguous and ‘[w]hether the written contract is reasonably susceptible of a proffered meaning.’” U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc., 281 F.3d 929, 934 (9th Cir. 2002) (citations omitted). But when a bankruptcy court “uses extrinsic evidence to interpret a contract, we review the findings of fact for clear error and the principles of law applied to those facts de novo.” See DP Aviation, 268 F.3d at 836.
“The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.” Morey v. Vannucci, 64 Cal.App.4th 904, 75 Cal.Rptr.2d 573, 578 (1998) (citation omitted). “Mutual intention ... is determined by objective manifestations of the parties’ intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.” Id, Under California law, when the meaning of words in a contract are disputed, extrinsic evidence is admissible to aid interpretation when it “is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.” Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 644 (1968).
The bankruptcy court erred in determining that the 2007 letter between Neuman and Heller Ehrman LLP establishing his fixed income shareholder status (2007 Letter Agreement) terminated Neuman’s status as a shareholder of Heller Ehrman (California), a Professional Corporation (Heller CA PC) and made him an employee of Heller Ehrman LLP.[1] This determination involved mixed questions of law and fact. The text of the 2007 Letter Agreement, when read with the Employment Agreement between Neuman and the Heller CA PC, makes clear that the 2007 Letter Agreement simply modified how *482 Neuman was to be paid; it did not modify his status as a shareholder.
To begin, the 2007 Letter Agreement states Neuman will remain a “fixed income shareholder.” While the bankruptcy court believed it to be a “critical fact” that Neu-man was to be paid a fixed income, the Employment Agreement does not prohibit shareholders from receiving fixed incomes. The Employment Agreement does require that “compensation shall be determined only as provided in this Agreement.” However, the Employment Agreement merely states that the salary will be paid “from that portion of the [PC’s] draw under the Partnership Agreement which is attributable to the Employee, in such amount and at such times as are determined by the [PC].” Even though Heller Ehrman LLP signed the 2007 Letter Agreement, not Heller CA PC, the Employment Agreement makes clear that when it refers to decisions or actions by “the [PC] ” in such matters as “determination of employee compensation,” that also includes decisions by the LLC. The party that signed the 2007 Letter Agreement is therefore not significant.
The bankruptcy court clearly erred in finding that the 2007 agreement “represented the entirety of the parties’ agreement regarding Neuman’s employment and compensation for 2007 through 2010.” This was essentially a finding that the 2007 Letter Agreement was a novation that terminated the Employment Agreement. In order to prove a novation, Neuman had to establish a new agreement “to abandon and extinguish” the Employment Agreement “and to substitute therefor a new and valid contract.” San Gabriel Valley Ready-Mixt v. Casillas, 142 Cal.App.2d 137, 298 P.2d 76, 78 (1956). “The burden of proof is on the party asserting” the novation (here, Neuman) to “clearly” demonstrate “that the parties intended to extinguish rather than merely modify the original agreement.” Howard v. Cty. of Amador, 220 Cal.App.3d 962, 977, 269 Cal.Rptr. 807 (Cal. Ct. App. 1990). There is not clear evidence the parties intended to extinguish the prior Employment Agreement. “A new arrangement for payment under a contract is not, in itself, sufficient to effect a novation.” Davies Machinery Co. v. Pine Mountain Club, Inc., 39 Cal.App.3d 18, 24, 113 Cal.Rptr. 784 (Ct. App. 1974). The text of the 2007 Letter Agreement makes no mention of terminating the prior agreements making Neuman a shareholder and still referred to Neuman as a shareholder.
The bankruptcy court also found that Neuman had no “units of compensation” and no “Attributed Percentage” for the purposes of compensation. This clearly erroneous factual finding led to the court’s incorrect legal conclusion that Neuman was no longer a shareholder. The “Attributed Percentage” is a figure determined by the Compensation Committee based on each shareholder’s compensation as a percentage of the LLC’s net profits, which is then used to determine the weight of each shareholder’s votes. It is not a figure used (let alone required) for shareholder compensation. And Neuman had an Attributed Percentage: it was his fixed income divided by the LLC’s net profits. That percentage, as calculated from year to year, determined the weight of Neuman’s vote on shareholder matters. Voting was a privilege reserved only to shareholders, which Neuman exercised, in accordance with the calculated Attributed Percentage.
Other factors in the 2007 Letter Agreement, as well as the course of conduct of the parties, support a finding that Neu-man remained a shareholder: Neuman’s preferred shares were not repurchased by the LLP, and his capital contribution was not repaid, both of which were contractually required when a shareholder and the *483 LLP terminated a shareholder relationship; Neuman was allowed to (and did) vote with the other shareholders, and only-shareholders were allowed to vote; he retained rights and benefits available only to shareholders, such as receiving financial information and attending shareholder meetings; and Neuman was paid by the Heller CA PC, and only shareholders were paid by the PCs. Further, when the LLP intended to terminate a shareholder relationship, it did so explicitly and unambiguously through documents clearly titled “Employment Agreement.” The bankruptcy court found these factors “really almost irrelevant” because the fixed income element was dispositive. However, as explained above,'the focus on the fixed income element was both factually and legally incorrect.
Heller’s dissolution foreclosed any further compensation to Neuman because, under his Employment Agreement, which continued to govern in this respect, he was no longer “entitled to any compensation or any other monies or property” following “the termination of [the] Agreement” when Heller dissolved.
REVERSED AND REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

, Heller Ehrman LLP was an international law firm, which operated as a partnership comprised, of local professional corporations (PCs) in different regions of the United States and globally.