NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HELLER EHRMAN LLP, Liquidating Debtor, <br><br>               Petitioner-Appellant, <br><br> v. <br><br> K. WILLIAM NEUMAN, <br><br>               Respondent-Appellee. | No.    15-17124 <br><br> D.C. No. 3:14-cv-04002-CRB <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted March 16, 2017
San Francisco, California

Before:  WALLACE, McKEOWN, and BYBEE, Circuit Judges.

Heller Ehrman LLP petitions for review of the district court's affirmance of

a Bankruptcy Court's order allowing K. William Neuman's claim for

$1,161,066.43 allegedly owed under an employment contract. Because we

conclude Neuman was a shareholder at the time of dissolution, we reverse.

---

        [*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Mixed questions of law and fact are reviewed de novo. *Hamada v. Far E. Nat'l Bank*, 291 F.3d 645, 649 (9th Cir. 2002). "We review the interpretation and meaning of contract provisions de novo." *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 836 (9th Cir. 2001) (citation omitted). "We also review de novo the determinations of whether contract language is ambiguous and '[w]hether the written contract is reasonably susceptible of a proffered meaning.'" *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (citations omitted). But when a bankruptcy court "uses extrinsic evidence to interpret a contract, we review the findings of fact for clear error and the principles of law applied to those facts de novo." *See DP Aviation*, 268 F.3d at 836.

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Ct. App. 1998) (citation omitted). "[M]utual intention . . . is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the

2

parties." *Id.* Under California law, when the meaning of words in a contract are disputed, extrinsic evidence is admissible to aid interpretation when it "is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 644 (Cal. 1968).

The bankruptcy court erred in determining that the 2007 letter between Neuman and Heller Ehrman LLP establishing his fixed income shareholder status (2007 Letter Agreement) terminated Neuman's status as a shareholder of Heller Ehrman (California), a Professional Corporation (Heller CA PC) and made him an employee of Heller Ehrman LLP.[1] This determination involved mixed questions of law and fact. The text of the 2007 Letter Agreement, when read with the Employment Agreement between Neuman and the Heller CA PC, makes clear that the 2007 Letter Agreement simply modified how Neuman was to be paid; it did not modify his status as a shareholder.

To begin, the 2007 Letter Agreement states Neuman will remain a "fixed income *shareholder*." While the bankruptcy court believed it to be a "critical fact" that Neuman was to be paid a fixed income, the Employment Agreement does not

---

[1] Heller Ehrman LLP was an international law firm, which operated as a partnership comprised of local professional corporations (PCs) in different regions of the United States and globally.

prohibit shareholders from receiving fixed incomes. The Employment Agreement does require that "compensation shall be determined only as provided in this Agreement." However, the Employment Agreement merely states that the salary will be paid "from that portion of the [PC's] draw under the Partnership Agreement which is attributable to the Employee, *in such amount and at such times as are determined by the [PC].*" Even though Heller Ehrman LLP signed the 2007 Letter Agreement, not Heller CA PC, the Employment Agreement makes clear that when it refers to decisions or actions by "the [PC]" in such matters as "determination of employee compensation," that also includes decisions by the LLC. The party that signed the 2007 Letter Agreement is therefore not significant.

The bankruptcy court clearly erred in finding that the 2007 agreement "represented the entirety of the parties' agreement regarding Neuman's employment and compensation for 2007 through 2010." This was essentially a finding that the 2007 Letter Agreement was a novation that terminated the Employment Agreement. In order to prove a novation, Neuman had to establish a new agreement "to abandon and extinguish" the Employment Agreement "and to substitute therefor a new and valid contract." *San Gabriel Valley Ready-Mixt v. Casillas*, 298 P.2d 76, 78 (Cal. Dist. Ct. App. 1956). "The burden of proof is on the party asserting" the novation (here, Neuman) to "clearly" demonstrate "that the

4

parties intended to extinguish rather than merely modify the original agreement."

*Howard v. Cty. of Amador*, 220 Cal. App. 3d 962, 977 (Cal. Ct. App. 1990). There is not clear evidence the parties intended to extinguish the prior Employment Agreement. "A new arrangement for payment under a contract is not, in itself, sufficient to effect a novation." *Davis Machinery Co. v. Pine Mountain Club, Inc.* 39 Cal. App. 3d 18, 24 (Ct. App. 1974). The text of the 2007 Letter Agreement makes no mention of terminating the prior agreements making Neuman a shareholder and still referred to Neuman as a shareholder.

The bankruptcy court also found that Neuman had no "units of compensation" and no "Attributed Percentage" for the purposes of compensation. This clearly erroneous factual finding led to the court's incorrect legal conclusion that Neuman was no longer a shareholder. The "Attributed Percentage" is a figure determined by the Compensation Committee based on each shareholder's compensation as a percentage of the LLC's net profits, which is then used to determine the weight of each shareholder's votes. It is not a figure used (let alone required) for shareholder compensation. And Neuman had an Attributed Percentage: it was his fixed income divided by the LLC's net profits. That percentage, as calculated from year to year, determined the weight of Neuman's

5

vote on shareholder matters. Voting was a privilege reserved only to shareholders, which Neuman exercised, in accordance with the calculated Attributed Percentage.

Other factors in the 2007 Letter Agreement, as well as the course of conduct of the parties, support a finding that Neuman remained a shareholder: Neuman's preferred shares were not repurchased by the LLP, and his capital contribution was not repaid, both of which were contractually required when a shareholder and the LLP terminated a shareholder relationship; Neuman was allowed to (and did) vote with the other shareholders, and only shareholders were allowed to vote; he retained rights and benefits available only to shareholders, such as receiving financial information and attending shareholder meetings; and Neuman was paid by the Heller CA PC, and only shareholders were paid by the PCs. Further, when the LLP intended to terminate a shareholder relationship, it did so explicitly and unambiguously through documents clearly titled "Employment Agreement." The bankruptcy court found these factors "really almost irrelevant" because the fixed income element was dispositive. However, as explained above, the focus on the fixed income element was both factually and legally incorrect.

Heller's dissolution foreclosed any further compensation to Neuman, as a shareholder, once the Dissolution Committee decided in September 2008 to stop paying shareholders any further compensation. And, as a shareholder at the time of

6

dissolution, the subordination requirements for shareholder claims under the 2008

Plan of Dissolution and 2010 Plan of Liquidation should be applied.

**REVERSED AND REMANDED.**

*Heller Ehrman LLP v. Neuman*, No. 15-17124

WALLACE, Circuit Judge, dissenting:

The central question in this case is whether William Neuman was a shareholder of Heller Ehrman LLP at the time of the firm's dissolution. The bankruptcy court conducted a bench trial, made findings of fact, and found that Neuman was not a shareholder during the relevant time period. The majority reverses, holding that the bankruptcy court's findings of fact were clearly erroneous and its conclusions of law incorrect. I would affirm the judgment because the bankruptcy court did not make clearly erroneous factual findings and its conclusions of California law were correct.

"Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal 4th 1, 18 (1995) (quoting Cal. Civ. Code § 1636).

The contract at issue here, Neuman's 2007 employment agreement, was drafted poorly and ambiguously—a surprising outcome considering the legal firepower on both sides. Thus, the bankruptcy court property turned to extrinsic evidence in search of the mutual intent of the parties, and concluded that Neuman was not a shareholder during the relevant time period. I agree with the bankruptcy

court for the following reasons.

First, and most importantly, we must look to Neuman's compensation structure. The 2007 contract stated that "for four years" Neuman's "annual compensation shall be fixed at $775,000." Furthermore, the contract stated that Neuman "will not appear on the variable compensation list published each year by the Compensation Committee, nor shall [Neuman] be required to make capital contributions through the purchase of preferred stock."

To me, the hallmark of being a partner or a shareholder in a law firm is having an equity stake in the firm's profits and losses. Here, upon signing the 2007 agreement, Neuman no longer had any economic stake in the firm's bottom line. Rather, his compensation and economic stake was fixed, notwithstanding the economic success (or failure as it turns out) of the firm. Thus, Neuman was in the same position as the other salaried employees, such as associates and staff.

The second reason relates to Heller's corporate structure. The bankruptcy court made the factual finding that Heller shareholders were employed by regional PCs, whereas the salaried employees were employed by the central LLP. Up until 2007, Neuman was employed by Heller California PC, while employees of the firm, such as associates, were employed by the LLP. Neuman's 2007 employment contract is explicit—it states that it is a "new agreement with Heller Ehrman LLP."

2

The agreement is signed by an officer by the LLP (not an officer of the PC). The inclusion of the LLP demonstrates the intent of the parties to change Neuman's status. If the parties' intent was for Neuman to remain a shareholder, and that his compensation scheme was merely being tweaked as the majority holds, then this agreement would have been with the regional Heller PC. Instead, however, the 2007 agreement was with the LLP, which employed the salaried employees, not the shareholders.

The majority responds to this inconvenient fact by stating: "Even though Heller Ehrman LLP signed the 2007 Letter Agreement, not Heller CA PC, the Employment Agreement makes clear that when it refers to decisions or actions by 'the [PC]' in such matters as 'determination of employee compensation,' that also includes decisions by the LLC [sic]." I respectfully disagree. The Employment Agreement makes no mention of the LLP. It certainly does not "make clear" that when it refers to compensation decisions by the PC, it actually means the LLP too. The majority's clairvoyant ability to discern that the Employment Agreement's compensation language "also includes decisions by the LL[P]," despite its failure to even mention the LLP, does not withstand any level of scrutiny.

Other factors weighing in Neuman's favor are that, as stated above, the 2007 agreement stated that Neuman "will not appear on the variable compensation list

3

published each year by the Compensation Committee, nor shall [Neuman] be required to make capital contributions through the purchase of preferred stock." Furthermore, the Heller partnership documents stated explicitly that variable compensation, described within the Heller documents, is the "Exclusive Basis for [Shareholder] Compensation." The fact that Neuman agreed to a fixed salary again demonstrates his employee status, because he did not participate in the exclusive manner in which shareholders were paid.

It seems to me that these findings of fact were not erroneous—and especially not clearly erroneous. But the majority relies on several factors weighing against Neuman to conclude he remained a shareholder despite signing the 2007 agreement. This conclusion is conceivable, considering how defectively the 2007 agreement was drafted. Nevertheless, under California law, what matters is the intent of the parties. The bankruptcy court, which heard live testimony from the relevant players, was in the best position to determine that intent. The bankruptcy court's findings of fact were not clearly erroneous and the conclusions of law that followed from them were correct under California law. Accordingly, I would affirm the bankruptcy court's judgment, and decide that its findings were not clearly erroneous.